[No. D044192. Fourth Dist., Div. One. Feb. 3, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
RONALD MORRIS, Defendant and Respondent.

528

532

## Counsel

Michael A. Ramos, District Attorney, Grover D. Merritt, Mary L. Andonov and Diane Harrison, Deputy District Attorneys, for Plaintiff and Appellant.

John E. Roth, Public Defender, and Pamela Preston King, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**AARON, J.—**

I.

INTRODUCTION

The trial court committed Ronald Morris as a mentally disordered offender (MDO) for a one-year term, which was to end on February 3, 2004. Morris spent the entire one-year commitment on outpatient status, pursuant to Penal Code[1] section 2972, subdivision (d). On February 6, 2004, the People filed a petition to recommit Morris as an MDO. The trial court granted Morris's motion to dismiss the action on the ground that the People failed to file a petition for recommitment prior to the termination of Morris's one-year term of commitment. The People appeal the trial court's order dismissing the action.

Section 2970 provides that the district attorney may file a petition to commit a prisoner or parolee for involuntary treatment as an MDO upon the person's release from prison or completion of parole. Section 2972, subdivision (d) provides that a person committed as an MDO may be treated on an outpatient basis if the court finds there is reasonable cause to believe the person can be safely and effectively treated in such a manner. However, section 2972, subdivision (c) provides that "[t]ime spent on outpatient status" shall not count toward an MDO's term of commitment under section 2972. Section 2972, subdivision (e) provides that the People may file a petition to recommit the MDO for an additional term prior to the termination of an MDO's commitment.

Section 2972.1 sets forth a distinct set of recommitment procedures applicable to persons who have received a year of outpatient treatment as an MDO. Section 2972.1 does not require that the People file a petition for recommitment in order to continue the involuntary treatment of an MDO.

In this case, it is undisputed that Morris received a year of outpatient treatment, and no inpatient treatment, during the commitment period ending on February 3, 2004. Therefore, the recommitment procedures of section 2972.1, rather than section 2972, apply. Section 2972.1 does not require the People to file a petition for recommitment in order to continue an MDO's treatment. The trial court thus erred in dismissing the action to continue Morris's treatment as an MDO on the ground that the People failed to timely

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

file a petition for recommitment. Accordingly, we reverse the trial court's order dismissing the action to recommit Morris.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1990, Morris committed rape with force or violence (§ 261, subd. (a)(2)) and oral copulation with force (§ 288a, subd. (c)(2)). The trial court sentenced Morris to state prison.[2] Morris was paroled in 1996. In 1997, Morris was found to be an MDO pursuant to section 2962, and was placed in an inpatient treatment at Atascadero State Hospital. In October 1999, Morris was admitted to an outpatient program under the San Bernardino/Riverside County Conditional Release Program (CONREP).

Morris's parole was scheduled to expire on February 3, 2000. On February 14, 2000, the People filed a petition to recommit Morris as an MDO. On February 28, 2000, Morris stipulated to a one-year extension of his outpatient treatment and agreed to extend his parole to February 3, 2001. On November 7, 2000, Morris stipulated to another year of outpatient treatment, to February 3, 2002. On February 1, 2002, Morris again stipulated to an additional one-year extension of his commitment. On July 3, 2003, the court extended Morris commitment to February 3, 2004 without opposition.[3]

On or about January 23, 2004, the CONREP program faxed a letter and a report to the court dated January 16, 2004.[4] The report recommended that Morris's outpatient treatment as an MDO be renewed. The letter stated that copies of the letter and the report had been sent to defense counsel and to the People. In addition, the letter stated that Mr. Morris "has requested a hearing to pursue release from the CONREP supervision and treatment . . . ."

On February 6, 2004, the People filed a petition to commit Morris as an MDO pursuant to section 2970. On February 20, 2004, the trial court held a hearing on the People's petition. Also on February 20, 2004, Morris and his defense counsel filed a form requesting a jury trial on the issue whether Morris required further treatment as an MDO.

---

[2] The record does not indicate the date of Morris's conviction or sentencing.

[3] We note that although the July 3, 2003 order stated that Morris's discharge date was January 24, 2004, the People claimed below, and the trial court agreed, that the discharge date was actually February 3, 2004. Morris does not contest the trial court's finding on this issue. Therefore, although the precise date of discharge is not material to our resolution of this appeal, we use the February 3, 2004 date.

[4] The record is unclear as to when the letter and report were actually faxed to the court. The record and the letter were not filed until February 4, 2004.

On March 16, 2004, Morris moved to dismiss this action on the ground that the People had failed to file the petition prior to February 3, 2004—the date on which Morris's commitment terminated. On March 29, 2004, the trial court granted Morris's motion to dismiss. The court stayed its order for 30 days to facilitate the possibility of appellate review.

On April 16, 2004, the People filed an appeal of the trial court's March 29, 2004 order in the Court of Appeal, Fourth Appellate District, Division Two. On April 21, 2004, the People filed a petition for a writ of mandate or prohibition and supersedeas and request for immediate stay in that court. On April 26, 2004, the case was transferred to this court pursuant to California Rules of Court, rule 47.1(b)(1)(B). On April 27, 2004, this court denied the People's petition for mandate or prohibition, granted the People's petition for a writ of supersedeas, stayed the trial court's order pending disposition of this appeal, and ordered the appeal expedited.[5]

## III.

## DISCUSSION

A. *The trial court erred in dismissing the action to continue Morris's treatment as an MDO on the ground that the People failed to timely file a petition for recommitment*

■ The People claim the trial court erred in dismissing this action to continue Morris's treatment as an MDO on the ground that the People failed to timely file a petition for recommitment. The People contend that under the circumstances of this case, neither section 2972 nor section 2972.1 required the People to file a petition in order to continue Morris's treatment. This claim raises an issue of statutory construction. Accordingly, we apply a de novo standard of review. (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484 [17 Cal.Rptr.3d 88] (*Whaley*).) ■ "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory

---

[5] We construe the March 29, 2004 order dismissing the February 6, 2004 petition as a final judgment, which is appealable pursuant to Code of Civil Procedure section 904.1. (*People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 834 [58 Cal.Rptr.2d 32].)

context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley, supra,* 121 Cal.App.4th at pp. 484–485.)

### 1. *Overview of the statutory scheme governing MDO's*

#### *The MDO statutes*

Section 2960 sets forth the purpose of California's MDO statutes (§ 2960 et seq.): "The Legislature finds that there are prisoners who have a treatable, severe mental disorder that was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated. Secondly, the Legislature finds that if the severe mental disorders of those prisoners are not in remission or cannot be kept in remission at the time of their parole or upon termination of parole, there is a danger to society, and the state has a compelling interest in protecting the public. Thirdly, the Legislature finds that in order to protect the public from those persons it is necessary to provide mental health treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission."

### 2. *MDO status as a condition of parole*

■ Pursuant to section 2962, a parolee may be committed as an MDO as a condition of parole. Section 2964 subdivision (a) provides that the parolee MDO may receive treatment as an outpatient if there is "reasonable cause to believe the parolee can be safely and effectively treated on an outpatient basis. . . ."

### 3. *MDO commitment after parole or release from prison*

■ Section 2970 provides that no later than 180 days before the termination of the MDO's parole or release from prison, if the MDO's severe mental disorder is not in remission or cannot be kept in remission without treatment, the person in charge of treating the MDO must submit a report to the district attorney stating "his or her written evaluation on remission." (§ 2970.) The district attorney may then file a petition seeking the continued involuntary treatment of the MDO for an additional year. (*Ibid.*)

■ Section 2972 outlines the procedures to be followed in considering a section 2970 petition. The court is required to hold a hearing and to advise the MDO of his right to a jury trial on the petition and his right to an attorney. (§ 2972, subd. (a).) The trial on the petition shall commence "no

later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown." (*Ibid.*)

Section 2972, subdivision (c) provides that the court may continue the commitment for involuntary treatment upon the following findings: "If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed, or committed to the State Department of Mental Health if the person was in prison."

■ Section 2972, subdivision (d) specifies that an MDO may receive treatment as an outpatient if "the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis." However, section 2972, subdivision (c) provides, "Time spent on outpatient status, except when placed in a locked facility at the direction of the outpatient supervisor, shall not count as actual custody and shall not be credited toward the person's maximum term of commitment or toward the person's term of extended commitment." Section 2972, subdivision (d) also provides that California statutory law governing persons on outpatient status (§ 1600 et seq.), discussed in part III.B *post*, applies to MDO's on outpatient status.

Finally, section 2972, subdivision (e) specifies that an MDO may be recommitted for additional terms of involuntary treatment in the following manner: "Prior to the termination of a commitment under this section, a petition for recommitment may be filed to determine whether the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others. The recommitment proceeding shall be conducted in accordance with the provisions of this section."

4. *Limitations on the length of outpatient treatment and recommitment under section 2972.1*

Section 2972.1 provides a separate set of procedures applicable to MDO's who have received a year of outpatient treatment:

"(a) Outpatient status for persons committed pursuant to Section 2972 shall be for a period not to exceed one year. Pursuant to Section 1606, at the end of

a period of outpatient status approved by the court, the court shall, after actual notice to the prosecutor, the defense attorney, the community program director or a designee, the medical director of the facility that is treating the person, and the person on outpatient status, and after a hearing in court, either discharge the person from commitment under appropriate provisions of law, order the person confined to a treatment facility, or renew its approval of outpatient status.

"(b) Prior to the hearing described in subdivision (a), the community program director or a designee shall furnish a report and recommendation to the court, the prosecution, the defense attorney, the medical director of the facility that is treating the person, and the person on outpatient status. If the recommendation is that the person continue on outpatient status or be confined to a treatment facility, the report shall also contain a statement that conforms with [the] requirements of subdivision (c).

"(c)(1) Upon receipt of a report prepared pursuant to Section 1606 that recommends confinement or continued outpatient treatment, the court shall direct prior defense counsel, or, if necessary, appoint new defense counsel, to meet and confer with the person who is on outpatient status and explain the recommendation contained therein. Following this meeting, both defense counsel and the person on outpatient status shall sign and return to the court a form which shall read as follows:

" 'Check One:

" '___ I do not believe that I need further treatment and I demand a jury trial to decide this question.

" '___ I accept the recommendation that I continue treatment.'

"(2) The signed form shall be returned to the court at least 10 days prior to the hearing described in subdivision (a). If the person on outpatient status refuses or is unable to sign the form, his or her counsel shall indicate, in writing, that the form and the report prepared pursuant to Section 1606 were explained to the person and the person refused or was unable to sign the form.

"(d) If the person on outpatient status either requests a jury trial or fails to waive his or her right to a jury trial, a jury trial meeting all of the requirements of Section 2972 shall be set within 60 days of the initial hearing.

"(e) The trier of fact, or the court if trial is waived, shall determine whether or not the requirements of subdivisions (c) and (d) of Section 2972 have been met. The court shall then make an appropriate disposition under subdivision (a) of this section.

"(f) The court shall notify the community program director or a designee, the person on outpatient status, and the medical director or person in charge of the facility providing treatment of the person whether or not the person was found suitable for release."

█ Although it is not a model of clarity, we construe section 2972.1 to specify that with respect to the recommitment of an MDO who has received a year of outpatient treatment, the court is required to calendar a hearing no later than 30 days after the end of the one-year period of outpatient status to consider whether to discharge the MDO from commitment, order the MDO confined to a treatment facility, or renew its approval of the MDO's outpatient status. (§ 2972.1, subd. (a).) The MDO's community program director is required to submit a report and recommendation to the court, the prosecution, the defense attorney, the medical director of the facility treating the MDO, and the MDO, regarding whether to renew the MDO's outpatient status, confine the MDO to a treatment facility, or discharge the MDO from treatment. (§ 2972.1, subd. (b).)

█ Upon receipt of the community program director's report, the court is required to direct defense counsel to confer with the MDO regarding the report's recommendation. (§ 2972.1, subd. (c)(1).) If the report recommends further treatment, the MDO is required to return to the court a signed form indicating either that he does not believe he needs further treatment and demands a jury trial to decide this question, or that he accepts the recommendation. The signed form must be returned to the court at least 10 days prior to the hearing described in the previous paragraph. (§ 2972.1, subd. (c)(2).) If the MDO is either unable or unwilling to sign the form, the MDO's counsel is required to inform the court and the People that the report and the form were explained to the MDO and that he refused or was unable to sign the form. (*Ibid.*)[6]

---

[6] The statute does not state precisely when the community program director's report must be submitted. However, 2972.1, subdivision (b) states that if the report recommends continued treatment beyond the one-year period of outpatient treatment, it shall contain the form regarding whether the MDO accepts the recommendation, or instead, wishes a jury trial on the question of further treatment. Section 2972.1, subdivision (c)(2) states that the MDO must return this form 10 days prior to the hearing described in section 2972.1, subdivision (a). Therefore, we construe the statute to require the community program director's report to be submitted to the MDO with sufficient time to enable him to comply with this duty.

■ If the MDO waives his right to a jury trial and agrees to further treatment, the court shall: (1) hold the hearing described in section 2972.1, subdivision (a); (2) determine whether the requirements for commitment under section 2972, subdivisions (c) and (d) are met; and (3) either discharge the MDO, confine the MDO to a treatment facility, or renew its approval of the MDO's outpatient status. (§ 2972.1, subd. (e).)

If the MDO asserts his right to a jury trial, or fails to waive his right to a jury trial, the court must set a jury trial within 60 days of the initial hearing described in section 2972.1, subdivision (a) on the question whether the requirements for commitment under section 2972, subdivisions (c) and (d) are met.[7] (§ 2972.1, subds. (d), (e).) At the conclusion of the jury trial, the court must either discharge the MDO, confine the MDO to a treatment facility, or renew the MDO's outpatient status. (§ 2972.1, subds. (d), (e).)

B. *Statutes governing persons on outpatient status*

■ As noted above, section 2972, subdivision (d) provides that the statutes governing persons placed on outpatient status (§ 1600 et seq.) apply to MDO's on outpatient status. Section 1600 et seq. applies to persons receiving outpatient treatment under the former mentally disordered sex offender (MDSO) statutes (former Welf. & Inst. Code, §§ 6316.2, 6316.1), the statute pertaining to the treatment of criminal defendants found not guilty by reason of insanity (§§ 1026, 1026.5), as well as the MDO statute (§ 2972). (§ 1600.5.) Like section 2972, subdivision (c), section 1600.5 specifies that time spent on outpatient status shall not count toward a person's term of commitment under section 2972: "For a person committed as a mentally disordered sex offender under former Section 6316 or 6316.2 of the Welfare and Institutions Code, or committed pursuant to Section 1026 or 1026.5, *or committed pursuant to Section 2972*, who is placed on outpatient status under the provisions of this title, time spent on outpatient status, except when placed in a locked facility at the direction of the outpatient supervisor, shall not count as actual custody and shall not be credited toward the person's maximum term of commitment or toward the person's term of extended commitment." (§ 1600.5, italics added.)

■ In addition, section 2972.1, subdivision (a) provides that at the end of a period of outpatient status, pursuant to section 1606, the court shall provide notice to all of the relevant parties, hold a hearing in court, and either

---

[7] We need not decide whether, under section 2972.1, subdivision (e), it is the jury or the court that decides whether a person can be treated as an outpatient. In this case, the state is seeking only to continue Morris's outpatient treatment, not to confine him as an inpatient. Therefore, if the jury in this case decides that the requirements of section 2972, subdivision (c) have been met, Morris will receive treatment as an outpatient.

discharge the MDO from commitment under the appropriate provisions of law, order the person confined to a treatment facility, or renew its approval of outpatient status.

Section 1606 provides: "Outpatient status shall be for a period not to exceed one year. At the end of the period of outpatient status approved by the court, the court shall, after actual notice to the prosecutor, the defense counsel, and the community program director, and after a hearing in court, either discharge the person from commitment under appropriate provisions of the law, order the person confined to a treatment facility, or renew its approval of outpatient status. Prior to such hearing, the community program director shall furnish a report and recommendation to the medical director of the state hospital, where appropriate, and to the court, which the court shall make available to the prosecutor and defense counsel. The person shall remain on outpatient status until the court renders its decision unless hospitalized under other provision of the law. The hearing pursuant to the provisions of this section shall be held no later than 30 days after the end of the one-year period of outpatient status unless good cause exists. The court shall transmit a copy of its order to the community program director or a designee."

C. *Neither section 2972, subdivision (e) nor section 2972.1 requires the filing of a petition for recommitment when an MDO has not received a year of inpatient treatment*

 1. *Section 2972, subdivision (e) does not apply when the MDO has not received a year of inpatient treatment*

The People claim that section 2972, subdivision (e) requires the filing of a petition for recommitment in order to extend an MDO's commitment for more than one year only if the MDO has received a year of *inpatient* treatment.

As noted above, section 2972 sets out the procedures applicable to the consideration of a section 2970 petition for the involuntary commitment of an MDO after parole or release from prison. Section 2972, subdivision (e) provides the recommitment procedures applicable to an MDO who has received a year of inpatient treatment. Specifically, section 2972, subdivision (e) provides that "[p]rior to the termination of a commitment under this section, a petition for recommitment may be filed to determine whether the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment" and that the "recommitment proceeding shall be conducted in accordance with the provisions of this section." *However,*

*section 2972, subdivision (c) and section 1600.5 both expressly state that periods of an MDO's outpatient treatment do not count toward the MDO's "term of extended commitment."*

Courts have held, with respect to analogous statutes, that no petition is required to continue the involuntary treatment of a person who has not received a year of inpatient treatment. In *People v. Superior Court (Henry)* (1993) 12 Cal.App.4th 1308 [15 Cal.Rptr.2d 896] (*Henry*), the court noted that a person could be "kept in actual custody" as a MDSO under former Welfare and Institutions Code section 6316.1 only for the maximum period of time the person could have been incarcerated if he had been sentenced to prison. (*Henry, supra,* 12 Cal.App.4th at p. 1311, quoting former Welf. & Inst. Code, § 6316.1.) In order to extend a term beyond this "maximum term of commitment," the People are required to file a petition to extend the commitment, pursuant to former Welfare and Institutions Code section 6316.2. (*Henry, supra,* 12 Cal.App.4th at p. 1311.)

Henry was an MDSO who had served "all but five months and eighteen days of the maximum term [of four years] in actual custody, when he was released . . . as an outpatient." (*Henry, supra,* 12 Cal.App.4th at p. 1311.) After his release, the trial court held "annual review hearings at which Henry's outpatient status had been renewed." (*Ibid.*) Henry made a motion to terminate his commitment on the ground that the court had lost jurisdiction, arguing that the four-year maximum term of commitment had expired, and that the People had failed to petition the court to extend the commitment pursuant to former Welfare and Institutions Code section 6316.2. (*Henry, supra,* 12 Cal.App.4th at p. 1311.) The trial court concluded that Henry's term of commitment had expired while he was on outpatient status and granted Henry's motion to terminate the commitment. (*Ibid.*)

The appellate court reversed. The court agreed with the People's contention that "no . . . petition [to extend Henry's commitment] was necessary because the original commitment does not expire until the MDSO serves the maximum term in actual custody." (*Henry, supra,* 12 Cal.App.4th at p. 1312.) The *Henry* court relied on the Supreme Court's holding in *In re Moye* (1978) 22 Cal.3d 457, 464 [149 Cal.Rptr. 491, 584 P.2d 1097] that the phrase "actual custody" in former Welfare and Institutions Code section 6316.1 does not include time spent as an outpatient. (*Henry, supra,* 12 Cal.App.4th at p. 1312.)

In *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 498 [124 Cal.Rptr.2d 301] (*Crosswhite*), the People charged Crosswhite with assault with a deadly weapon on a peace officer by means of force likely to produce great bodily

injury. The trial court found Crosswhite not guilty by reason of insanity and committed him to a state hospital for a maximum term of seven years, pursuant to section 1026. (*Crosswhite, supra,* 101 Cal.App.4th at p. 498.) Upon the completion of his term of maximum commitment in 1987, Crosswhite agreed to have his term extend for two years pursuant to section 1026.5 and the court released him as an outpatient. (*Crosswhite, supra,* 101 Cal.App.4th at p. 498.) The court thereafter renewed his outpatient status annually for several years pursuant to the review procedures specified in section 1606. (*Crosswhite, supra,* 101 Cal.App.4th at pp. 499–500.) In April 1999, the trial court revoked Crosswhite's outpatient status. (*Id.* at p. 500.) Thereafter, the district attorney petitioned the trial court to extend Crosswhite's commitment. The trial court granted the petition. (*Id.* at p. 501.)

On appeal from the recommitment order, Crosswhite claimed that "section 1026.5 must be read to include the constructive custody of outpatient status in the running of the term of commitment, and if outpatient status is counted as constructive custody, his commitment expired in 1989 and was not extended." (*Crosswhite, supra,* 101 Cal.App.4th at p. 502.) In rejecting this claim, the court noted that Crosswhite conceded that his term of commitment had not run under the express terms of section 1026.5, subdivision (b)(8) because the statute stated that time spent on outpatient status does not count toward a person's term of extended commitment. (*Crosswhite, supra,* 101 Cal.App.4th at p. 502.)[8]

The MDO statute contains language identical to the language in the statute governing the procedures to be followed for criminal defendants who are found not guilty by reason of insanity (§ 1026.5, subd. (b)(8)), as discussed in *Crosswhite, supra,* 101 Cal.App.4th 494, providing that time spent on outpatient status shall not count toward the person's term of extended commitment. (§ 2972, subd. (c).) Therefore, as with the analogous statutes at issue in *Henry, supra,* 12 Cal.App.4th 1308, and *Crosswhite,* the period during which the MDO is receiving outpatient treatment does not count toward his term of commitment.

We reject Morris's argument that the sentence in section 2972, subdivision (c) that "[t]ime spent on outpatient status . . . shall not count . . . toward the person's term of extended commitment," is meant to apply only in those circumstances in which a person is initially placed on inpatient status, and is

---

[8] With respect to the constitutional argument raised in *Crosswhite, supra,* 101 Cal.App.4th 494, we note that section 2972.1 differs from section 1026.5 in that section 2972.1 preserves for an MDO the right to a jury trial on the question whether further treatment is required. (§ 2972.1, subds. (c)–(e).)

later placed on outpatient status. There is nothing in the statutory language to suggest that the application of this provision is limited to instances in which the MDO is first placed on inpatient status. Morris notes that the legislative history regarding the act that added this sentence to section 2972, subdivision (c) states: "While this provision is not particularly clear, the provision is meant to apply to circumstances where the MDO [is] placed on inpatient status for up to a year, but released prior to the end of that period pursuant to Penal Code section 1603. Where he or she is returned to inpatient status pursuant to Penal Code section 1609, the time spent on outpatient status would not be credited to the balance of the original year." (Sen. Com. on Public Safety, Report on Assem. Bill No. 1881 (1999–2000 Reg. Sess.) May 17, 2000, pp. 5–6.)

We construe this analysis as constituting a description of *one* instance in which this portion of section 2972, subdivision (c) would apply, rather than a determination that this is the *only* instance in which the provision applies.

Morris relies on *Zachary v. Superior Court* (1997) 57 Cal.App.4th 1026 [67 Cal.Rptr.2d 532] and *People v. Williams* (1999) 77 Cal.App.4th 436 [92 Cal.Rptr.2d 1], for the proposition that if the People wished to extend his term of commitment, they were required to file a petition prior to the end of his current commitment. However, neither of these cases are apposite because in both *Zachary* and *Williams*, the MDO's were receiving *inpatient* treatment. (*Zachary, supra,* 57 Cal.App.4th at pp. 1028–1029; *Williams, supra,* 77 Cal.App.4th at p. 445.)

 Accordingly, we agree with the People that section 2972, subdivision (e) does not require that a petition be filed in order to extend an MDO's commitment unless the MDO has received a year of inpatient treatment.

> 2. *Section 2972.1 does not require that the People file a petition for recommitment in order to continue the treatment of an MDO who has received a year of outpatient treatment*

The People claim that section 2972.1 does not require the filing of a petition for recommitment in order to extend the commitment of an MDO who has received a year of outpatient treatment.

 As outlined *ante,* section 2972.1 specifies a procedure for the recommitment of an MDO who has received a year of outpatient treatment. The procedure provided under section 2972.1 for an MDO who has received a year of outpatient treatment is wholly distinct from the procedure provided

under sections 2970 and 2972 for the recommitment of an MDO who has received a year of inpatient treatment. Most importantly for purposes of this case, unlike sections 2970 and 2972, section 2972.1 does not require that the People file a petition in order to continue the involuntary treatment of an MDO who has received a year of outpatient treatment.

The distinctions between sections 2970 and 2972 on the one hand, and 2972.1 on the other, regarding this issue, are as follows. Section 2970 specifies that 180 days prior to the termination of a person's incarceration or parole, the person in charge of treating the MDO must submit a report to the district attorney that includes a written evaluation as to whether the prisoner's severe mental disorder is or is not in remission. The district attorney may then file a petition seeking the continued involuntary treatment of the MDO for an additional year. (§ 2970.) Section 2972, subdivision (e) provides that "[p]rior to the termination of a commitment under this section, a petition for recommitment may be filed," in order to continue involuntary treatment.

As with section 2970, section 2972.1 requires that the MDO's community program director file a report and recommendation regarding whether or not the MDO's involuntary treatment should be continued. However, unlike section 2970, section 2972.1 does not provide that upon receipt of this report the district attorney must file a petition in order to continue involuntary treatment. Rather, section 2972.1, subdivision (a) provides that the court is required to hold a hearing in order to consider whether to "discharge the person from commitment under appropriate provisions of law, order the person confined to a treatment facility, or renew its approval of outpatient status." There is nothing in section 2972.1 that suggests that the court's duty to hold this hearing is contingent upon the People's first filing a petition to continue the involuntary treatment.

Accordingly, we conclude that neither section 2972 nor section 2972.1 require that the People file a petition for recommitment in order to continue an MDO's involuntary treatment where the MDO has not received a year of inpatient treatment.

3. *Legislative history supports the conclusion that a petition for recommitment is not required unless the MDO has received a year of inpatient treatment*

The legislative history of both the outpatient statutes and the MDO statutes supports the conclusion that a petition for recommitment is not required unless the MDO has received a year of inpatient treatment.

In 1994, the Legislature specifically amended section 1600.5 to expressly state that periods of outpatient treatment "shall not be credited toward the person's maximum term of commitment *or toward the person's term of extended commitment.*" (Stats. 1993–1994, 1st Ex. Sess. 1994, ch. 9, § 2, p. 8561, italics added.) In the same act, the Legislature enacted Welfare and Institutions Code section 6332 to make clear that periods of outpatient treatment received under the former MDSO statute do not count toward a person's term of extended commitment. (Stats. 1993–1994, 1st Ex. Sess. 1994, ch. 9, § 3, p. 8561.) The act also amended section 1026.5, to make a similar clarification with regard to persons receiving outpatient treatment as a result of a commitment pursuant to a finding of not guilty by reason of insanity. (Stats. 1993–1994 (1st Ex. Sess. 1994) ch. 9, § 1, p. 8558.) The legislative history of the act demonstrates that it was enacted "in response to *People v. Gunderson* (1991) 228 Cal.App.3d 1292 [279 Cal.Rptr. 494], which held that because of the way former . . . section 6316.2 was written, time spent in outpatient status by an [MDSO] must be counted towards [*sic*] the time spent in extended commitment." (Sen. Com. on Judiciary, Bill Analysis on Sen. Bill No. 39X (1993–1994 Ex. Sess.) Mar. 22, 2000.) This legislative history demonstrates that the Legislature specifically intended to provide that time spent on outpatient status does not count toward a person's term of extended commitment under either the former MDSO statute (former Welf. & Inst. Code, § 6316.2) or the statute pertaining to treatment of criminal defendants found not guilty by reason of insanity (§ 1026.5).

In 2000, the Legislature enacted Assembly Bill 1881 (1999-2000 Reg. Sess.) to amend sections 1600.5 and 2972 and add section 2972.1. (Stats. 2000, ch. 324, §§ 1, 3, 4.) The amendments to sections 1600.5 and 2972 clarified that time spent on outpatient status similarly did not count toward a person's term of extended commitment under the MDO statute. (Stats. 2000, ch. 324, §§ 1, 3.) The author of the bill provided the following statement in support of the bill:

"California's MDO law requires [a] district attorney to annually relitigate each and every MDO case where individuals have been placed in mental health treatment programs even though many of these individuals are not held in in-patient treatment facilities. These cases are in addition to the new MDO cases that are filed each year. In Los Angeles County, the District Attorney's office has seen over a 700% increase in MDO cases over the past three years and they believe that this growth rate will continue to climb.

"[*Assembly Bill*] 1881 would amend California's MDO law so that district attorneys would only have to relitigate MDO cases where the defendant is

confined in an in-patient mental health treatment facility, unless the defendant or his/her physician believes that the defendant no longer poses a danger to society. Limiting the automatic relitigation of MDO cases to those where the defendant is housed in an in-patient status on an annual basis. [*Sic*] Upon request, a hearing would be mandatory." (Assem. Com. on Public Safety, Report on Assem. Bill No. 1881 (1999–2000 Reg. Sess.) Mar. 14, 2000, p. 2.)

This statement that the act was intended to streamline the process of recommitting outpatient MDO's is consistent with the conclusion that sections 2972 and 2972.1 do not require the People to file a petition to recommit an MDO who has received less than a year of inpatient treatment.

> ### 4. *The trial court erred in dismissing the action to renew Morris's status as an outpatient MDO*

It is undisputed that Morris has not received any inpatient treatment since his parole expired in February 2000. It is thus clear that his current commitment under sections 2970 and 2972, which began in February 3, 2003, has not expired. Accordingly, the People were not required to file a petition pursuant to section 2972 to recommit Morris.

As of February 3, 2004, Morris had received a year of outpatient treatment since the time of his last recommitment. For the reasons discussed in part III.C.2 of this opinion, the People were not required to file a petition under section 2972.1 in order to continue Morris's treatment as an MDO. Accordingly, the trial court erred in granting Morris's motion to dismiss the action on the ground that the People failed to timely file a petition to recommit Morris as an MDO.[9]

## IV.

## CONCLUSION

The People were not required to file a petition in order to continue Morris's treatment as an MDO pursuant to either section 2972 or section 2972.1.

---

[9] In light of our conclusion that the People were not required to file a petition in order to continue Morris's treatment under sections 2972 or 2972.1, we need not consider the parties' arguments regarding whether the trial court properly dismissed the action on the ground that the petition the People filed was untimely.

## V.

## DISPOSITION

The March 29, 2004 order is reversed with directions to the trial court to set a jury trial under section 2972.1, subdivisions (d) and (e) within 60 days of the date on which the remittitur of this opinion issues, to determine whether Morris requires further treatment. The stay issued on April 27, 2004 will be vacated when the opinion is final as to this court.

Haller, Acting P. J., and O'Rourke, J., concurred.

Petitions for a rehearing were denied March 3, 2005, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 11, 2005.