[No. B198727. Second Dist., Div. Seven. June 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN RISH, Defendant and Appellant.

COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Victoria B. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ZELON, J.**—Appellant Steven Rish (Rish) appeals from an order recommitting him to the state Department of Mental Health for treatment as a mentally disordered offender pursuant to Penal Code section 2972.[1] On appeal, Rish does not challenge the sufficiency of the evidence supporting the trial court's finding that he met the requirements for continued involuntary treatment under section 2972, subdivision (c). Rather, he contends that the trial court erred in failing to exercise its discretion to determine whether he could be safely and effectively treated on an outpatient basis under section 2972, subdivision (d). We conclude that Rish forfeited his claim of error because he did not raise the issue of his suitability for outpatient treatment at the recommitment hearing and the trial court did not have a sua sponte duty to make this determination. We further conclude that, even assuming the trial court had a statutory duty to consider his suitability for outpatient treatment, Rish failed to present sufficient evidence to support a finding that he could be safely and effectively treated on an outpatient basis. Accordingly, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Petition for Continued Involuntary Treatment

Rish was convicted of assault with intent to commit rape. He was paroled to Atascadero State Hospital (Atascadero) as a mentally disordered offender in March 2002. On November 15, 2006, the District Attorney of Los Angeles County filed a petition for continued involuntary treatment of Rish pursuant to section 2970. The petition alleged that Rish continued to qualify as a mentally disordered offender and requested that his commitment at Atascadero be extended for an additional year. After Rish waived his right to a jury trial, the trial court held a hearing on the petition on March 27, 2007.

### II. The Prosecution's Case

Dr. Gordon Plotkin, a board certified forensic psychiatrist, testified on behalf of the prosecution. He performed a section 2970 evaluation of Rish in

---

[1] All further statutory references are to the Penal Code.

January 2007 based on his review of Rish's medical records. Dr. Plotkin did not consult with Rish's treating psychiatrist in preparing his evaluation, but he did review that doctor's notes, which documented various observations and conclusions about Rish's mental status. Although Dr. Plotkin attempted to interview Rish for the evaluation at that time, Rish refused.[2] Based on his evaluation, Dr. Plotkin concluded that Rish qualified for an extension of his commitment.

Dr. Plotkin testified that Rish had a severe mental disorder as defined by section 2962. He stated that the mental disorder most likely was schizophrenia, but possibly could be schizoaffective disorder, a combination of a mood disorder and schizophrenia. He also explained that there was evidence that Rish might have had some hypomanic episodes supporting a bipolar disorder diagnosis.

Dr. Plotkin opined that Rish was not in absolute remission, but was close to remission, or "close to baseline." He noted that, in Rish's recent hospital records, the clinical staff had documented that Rish was still showing some signs of paranoia, anger, and aggressiveness. On cross-examination, Dr. Plotkin clarified that while it was clear that Rish had an active mental illness and continued to manifest symptoms of that illness, it was not clear what his baseline was and whether he would ever be above that baseline. He indicated that Rish continued to exhibit some disorganized thoughts, but not enough to say that he was not in clinical remission.

On the other hand, Dr. Plotkin testified that he did not believe Rish could be kept in remission without treatment. He explained that Rish had engaged in some aggressive acts at the hospital requiring seclusion and restraints and had displayed sexually inappropriate behavior such as leering at staff and openly masturbating. He also noted that Rish was not completely compliant with his treatment plan due to his lack of participation in mandatory group therapy. Although Dr. Plotkin acknowledged that Rish regularly attended the sex offenders treatment program and also had attended a 12-week substance abuse program, it was his opinion that Rish was not actively participating in the sex offenders group or in other groups that he was required to attend. Additionally, while Dr. Plotkin agreed that Rish currently was complying with his medication regimen, he did not believe Rish would comply if

---

[2] Dr. Plotkin had interviewed Rish in 2006 for a prior section 2972 recommitment hearing and also performed a mentally disordered offender evaluation of Rish in 2002.

released from the hospital. He stated that, in the past, Rish had stopped taking his medication on his own. Dr. Plotkin further added that Rish did not fully understand that he had a mental illness, and as a result, he did not understand his need for medication.

It was also Dr. Plotkin's opinion that Rish posed a significant risk of harm to the public because his mental disorder made it difficult for him to control his actions. Dr. Plotkin testified that Rish had a combination of psychotic symptoms, including auditory hallucinations, visual hallucinations, and paranoia. In addition, he noted that Rish had demonstrated "thought insertion, thought withdrawal, and thought broadcasting," which meant that Rish believed people were projecting thoughts into his head and taking thoughts out of his head and believed that he was able to broadcast his thoughts to others. According to Dr. Plotkin, all of these symptoms were the result of Rish's mental illness, and during an exacerbation of the illness, Rish was observed to be more aggressive, more paranoid, and more likely to act out sexually.

Dr. Plotkin described some incidents in the past year in which he believed Rish had acted out in response to his symptoms. In January 2006, for instance, Rish was argumentative with a staff member when found loitering in the hallway of the hospital. In February 2006, he pushed a fellow patient. In June 2006, he was confronted by hospital staff about certain behavior and became so aggressive that he had to be put in restraints. On August 24, 2006, he threatened and charged at a staff member and again had to be put in restraints. On August 31, 2006, he became angry when discussing court dates with his treatment team. On another occasion in 2006, he was observed to be verbally assaultive toward a peer. Because Rish refused to be interviewed for the January 2007 evaluation, Dr. Plotkin was unable to discuss with him any of these reported incidents of aggressive behavior or any plan that Rish might have to care for himself if released from the hospital.

During his testimony, Dr. Plotkin also explained that Rish had a history of substance abuse, which exacerbated the symptoms of his mental illness. He noted that Rish had tested positive for marijuana in a urine toxicology screen in July 2006 and reportedly had been involved in selling alcohol at the hospital in the past year. According to Dr. Plotkin, marijuana had the effect of exacerbating psychotic symptoms while alcohol made prescribed medications less effective. In addition, Dr. Plotkin testified that he believed Rish attempted to manipulate both staff members and peers through intimidation; this demonstrated antisocial behavior. Although he acknowledged that antisocial behavior, by itself, was not a sufficient basis for extending Rish's commitment, Dr. Plotkin stated that such behavior was significant because it also

demonstrated Rish's inability to comply with his treatment plan, even in a controlled environment like Atascadero.

## III. *The Defense Case*

Rish testified on his own behalf. He explained that he had been a patient at Atascadero for five years and believed he did not need to stay there any longer. He further testified that he felt capable of providing for himself in terms of food, clothing, and shelter if released into the community. Rish acknowledged that he had refused to speak with Dr. Plotkin for the January 2007 evaluation, but asserted that it was because of an eye infection and that he had told Dr. Plotkin at the time that he was not feeling well and was injured. Rish also stated that he had spoken to Dr. Plotkin at least once in the past about his illness and treatment.

Rish described his mental illness as being "schizophrenic" and indicated that the symptoms of his illness were that he hallucinated and heard voices. He testified that he currently was taking Risperdal and Depakote to treat his illness and that the medications were helping him by making him "accurate" and keeping him "sociable." Rish believed that, because of the medications, he could distinguish between the voices in his head and when someone actually spoke to him and could separate what was real from what was not. He also stated that he had not had any symptoms of his illness since he had been on those medications. Additionally, Rish testified that he had not heard any voices in his head in the past year and did not have any thoughts of doing harm to others or himself. He acknowledged that he did need medication to treat his mental illness and that, without it, he would relapse and have symptoms again. However, he asserted that he never failed to take his medication and that, as long as he took it, he believed he could control his behavior.

Rish also testified that he attended group therapy sessions at the hospital and participated in those groups, but acknowledged that he had not attended 70 percent of the sessions as required by his treatment program. Because his controlling offense was attempted rape, Rish stated that he felt the sex offenders group was the most valuable and that he attended that group on a regular basis, twice a week. He explained that he also attended other groups at the hospital, such as "toast masters," "living skills," "N.A.," and "A.A.," and completed a 12-week substance abuse program four years earlier. According to Rish, he did his best to participate in the sex offenders group, but listened more than he talked during those sessions.

With respect to his aggressive behavior, Rish admitted that he had been placed in seclusion and restraints by the hospital staff in the past year. However, he claimed that those incidents were not caused by his mental illness, but rather were the result of frustration. He also denied that he had required medication used to calm patients in an agitated state on those specific occasions or at any time in the past year. With respect to the August 2006 incident in which he reportedly charged at a hospital staff member, Rish testified that when the staff member wrongly accused him of not complying with an order, he responded by saying things that he should not have. He denied that he physically attacked anyone and described it as "more like a verbal assault."

With respect to his alleged drug use, Rish admitted that he had tested positive for marijuana in July 2006. He also acknowledged that the use of illegal drugs could counteract his medication and cause him to relapse. However, he denied that he knowingly smoked marijuana on that occasion. Instead, Rish testified that he initially believed he was smoking a regular tobacco cigarette given to him by another patient and did not realize until it was too late that the cigarette had been laced with marijuana. Rish asserted that it was not difficult to get marijuana at the hospital and that the patient gave him the marijuana cigarette because they knew each other. He also denied that he sold alcohol to other patients.

Rish described his plan for caring for himself if released into the community. According to Rish, his plan would be to go to general relief, get a voucher for a hotel, get food stamps, and "sign up for S.S.I." He intended to live in downtown Los Angeles, Santa Monica, or Hollywood as he was familiar with those areas and had attended outpatient treatment in Hollywood in the past. He stated that he would rely on the bus or his sister for transportation. He also testified that he would not be tempted to use illegal drugs outside of the hospital and would attend "N.A." and "A.A." meetings on a regular basis. Additionally, Rish asserted that, if released into the community, he definitely would seek outpatient treatment and would take any medication that he was prescribed.

## IV.  *The Trial Court's Ruling*

At the close of testimony, the trial court heard arguments from counsel. In his closing argument, defense counsel did not dispute that Rish had a qualifying mental disorder, but rather asserted that he was in remission and

did not pose a substantial danger to the public. In particular, counsel argued that Rish was not showing the symptoms of his mental illness, was stable on his current medication, and was aware that he had a mental illness and needed medication to treat it. Counsel also contended that, based on Rish's testimony, he was capable of remaining in remission outside the hospital and had a plan to provide for himself and to seek outpatient treatment. Defense counsel acknowledged that Rish had to be placed in restraints in the prior year due to his conduct toward a hospital staff member, but stated that there was no evidence that Rish had been physically assaultive toward anyone. Counsel further argued that the evidence was insufficient to show that Rish would resort to using illegal drugs if released or that he would represent a substantial danger to the public. Defense counsel then concluded as follows: "So for those reasons, the remission issue and the substantial danger to the public issue, I'm going to ask the court to deny the petition for extension regarding Mr. Rish."

In her closing argument, the prosecutor contended that the testimony of Dr. Plotkin was compelling. She acknowledged that Rish had spoken well on his own behalf and appeared to be getting a very good handle on some of the issues with his mental illness. Nevertheless, she asserted that Rish's ability to control himself continued to be a problem as demonstrated by the fact that he had to be placed in seclusion and restraints by hospital staff. The prosecutor also noted that Rish had been "caught" with both marijuana and alcohol which, according to Dr. Plotkin's testimony, had the capacity to exacerbate the symptoms of his mental illness and decrease the effectiveness of his medication. She further argued that, given Rish's irritability in the hospital, his violations of the rules, and his documented problems with anger and self-control, he represented a substantial danger to the community. The prosecutor concluded by "ask[ing] the court to sustain the petition."

At the conclusion of the hearing, the trial court sustained the petition to extend Rish's commitment at Atascadero. Addressing Rish directly, the court stated as follows:

"Mr. Rish, the court has heard and considered, sir, the testimony of both Dr. Plotkin and your own testimony. And I would concur with the statement of the district attorney in your case that you did appear to me to testify in a very candid manner.

"I did believe your testimony that you have been compliant with your psychotropic medications in the hospital, and you also seem to be very candid about the fact that the medication does appear to be working well for you.

However, I have also heard the testimony about the fact that you have been involved in some incidents involving, if not violent, at least your anger within the past year both in June of last year '06 and also in August of '06.

"I've also heard Dr. Plotkin's testimony that he believes that you have limited insight into your mental illness at this time. I've heard the testimony that you have tested positive for marijuana [in] the hospital in August of last year and that goes along with the testimony of Dr. Plotkin that substance abuse, including marijuana, tends to exacerbate or make worse the symptoms of your mental illness.

"I have also listened to Dr. Plotkin's testimony that he believes that you are either in remission or pretty close to remission at this time. However, he believes if I were to release you from the hospital at this time that you could not be kept in remission without treatment.

"For those reasons, sir, the court is going to find that I do believe that you suffer from a severe mental disorder at this time. I believe that your severe mental disorder is in remission at this time; however, I believe it cannot be kept in remission without treatment. I do believe that because of your mental disorder, you cannot control your behavior at this time.

"And lastly, I also believe that because of your mental illness you pose a significant risk of physical harm to others. For those reasons, sir, the petition for extension pursuant to Penal Code section 2970 is now deemed to be true and is now sustained."

The trial court ordered that Rish be recommitted to the state Department of Mental Health for continued treatment at Atascadero. In accordance with that order, Rish's new maximum date of commitment was March 20, 2008. On April 18, 2007, Rish filed a timely appeal.

## V. *Subsequent Commitment Proceedings*

Rish's commitment under the trial court's March 27, 2007 order expired on March 20, 2008. On May 12, 2008, the trial court ruled on a subsequent section 2970 petition filed by the district attorney for an additional extension of Rish's commitment. The trial court found that Rish, "by reason of his severe mental disorder, cannot be kept in remission if his treatment is not

continued, and by reason of his severe mental disorder, . . . represents a substantial danger of physical harm to others." The trial court sustained the petition to extend Rish's commitment at Atascadero for an additional one-year term and set a new maximum date of commitment of March 20, 2009. In addition, the trial court ordered the director of Atascadero to submit a report on or before June 26, 2008 regarding Rish's "suitability for transfer to [a] community outpatient treatment program." The matter was continued for a nonappearance progress report hearing on June 26, 2008.

## DISCUSSION

On appeal, Rish does not challenge the sufficiency of the evidence supporting the trial court's determination that he continued to qualify as a mentally disordered offender. Instead, his appeal is directed at the trial court's decision to recommit him to inpatient treatment at Atascadero rather than to an outpatient program. In particular, Rish contends that the trial court failed to exercise its discretion to determine whether he could be safely and effectively treated on an outpatient basis as required by section 2972, subdivision (d). Rish also asserts that there was sufficient evidence presented at the recommitment hearing to support an order for outpatient treatment. Because we find no error in the trial court's ruling, we affirm.

I. *Rish's Appeal Presents a Controversy That Is Capable of Repetition, Yet Evading Review.*

■ As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions " ' " 'upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' " (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 227 [123 Cal.Rptr.2d 735].) "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief. [Citation.]" (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 454 [66 Cal.Rptr.3d 120].) Prior to oral argument, we requested supplemental briefing on whether this appeal should be dismissed as moot in light of the fact that, while the appeal was pending, the trial court issued a subsequent order extending Rish's commitment for an additional one-year term and setting a hearing to address his suitability for outpatient treatment. Although conceding that his term of commitment under the order at issue here has expired, Rish contends that his appeal is not moot, in part, because it presents an issue of public interest that is likely to recur in future commitment proceedings.

We agree that Rish's appeal raises an important issue about the scope of a trial court's statutory duty under section 2972 and that such issue is " 'capable of repetition, yet evading review.' [Citation.]" (*Thompson v. Department*

*of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198]; see also *People v. Cheek* (2001) 25 Cal.4th 894, 897–898 [108 Cal.Rptr.2d 181, 24 P.3d 1204] [concluding that the appeal of an expired commitment order was moot, but addressing the issue raised because it was "likely to recur while evading appellate review" and "involve[d] a matter of public interest"].) In particular, because a section 2970 petition must be filed on an annual basis, it is probable that a trial court would adjudicate any subsequent petition to extend a commitment for an additional one-year term before the appellate court would have an opportunity to review an earlier sustained petition, as was the case here. (See, e.g., *People v. Hurtado* (2002) 28 Cal.4th 1179, 1186 [124 Cal.Rptr.2d 186, 52 P.3d 116] [deciding issues raised by an expired commitment order under the Sexually Violent Predators Act because "the two-year limit on each commitment makes it likely that any appeal raising the issue would become moot before we could decide it"]; *People v. Williams* (1999) 77 Cal.App.4th 436, 441, fn. 2 [92 Cal.Rptr.2d 1] [addressing the merits of an appeal of a section 2972 commitment order that expired while the appeal was pending because even though "technically moot," the appeal raised issues that were "important and of continuing interest"].) Accordingly, we address the merits of Rish's appeal.

## II. *There Was No Sua Sponte Duty Under Section 2972 to Determine Suitability for Outpatient Treatment.*

■ Although Rish argues that the trial court erred in failing to determine whether he could be safely and effectively treated on an outpatient basis, he does not dispute that he never raised this issue at the recommitment hearing. Rather, he contends that the trial court erred because it had a mandatory duty under section 2972, subdivision (d) to decide his suitability for outpatient treatment, but failed to make such a determination. Because this argument raises an issue of statutory construction, we apply a de novo standard of review. (*People v. May* (2007) 155 Cal.App.4th 350, 357 [65 Cal.Rptr.3d 873] (*May*); *People v. Morris* (2005) 126 Cal.App.4th 527, 535 [23 Cal.Rptr.3d 881].) In construing any statute, we first must look at the language of the statute itself, giving the words their ordinary and usual meaning. (*People v. Morris, supra,* at pp. 535–536.) " 'If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain language of the statute governs." [Citation.]' " (*Id.* at p. 536.)

■ Sections 2970 and 2972 set forth the procedures for continuing the involuntary treatment of a mentally disordered offender after the termination of his or her parole or release from prison. Section 2970 states, in pertinent part, that upon the recommendation of the state hospital or community program treating a person whose parole or prison term is set to expire, the district attorney may file a petition to extend the person's involuntary

commitment for an additional one-year term. (§ 2970.) Section 2972 in turn specifies the procedures for considering a section 2970 petition. The trial court is required to hold a hearing on the petition and to advise the patient of his or her right to a jury trial and right to be represented by an attorney. (§ 2972, subd. (a).) At the conclusion of the trial, the court or jury must sustain the petition if it finds that (1) the patient has a severe mental disorder, (2) the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and (3) by reason of the severe mental disorder, the patient represents a substantial danger of physical harm to others. (§ 2972, subd. (c).)

Section 2972, subdivision (c) further provides that, if these findings are made, "the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed . . . ." (§ 2972, subd. (c).) However, subdivision (d) of the statute describes an alternative disposition that is available to the court in sustaining the petition. Section 2972, subdivision (d) states that "[a] person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."

■ Based on the plain language of section 2972, subdivision (d), there is no sua sponte duty on the part of the trial court to determine whether a mentally disordered offender can be safely and effectively treated on an outpatient basis. The statute does not state that the trial court "must" or "shall" make a determination regarding a committed person's suitability for outpatient treatment in ruling on a section 2970 petition. Rather, the statute provides that "if" the trial court makes such a determination (i.e., finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis), then the court "shall" order the person be released on outpatient status. (§ 2972, subd. (d).) Section 2972, subdivision (d) thus grants the trial court the authority to decide whether a person who meets the requirements for continued involuntary commitment under section 2972, subdivision (c) can be safely and effectively treated in an outpatient program. It does not, however, impose a mandatory duty on the court to make such a determination when the issue is not presented at the recommitment hearing.[3]

---

[3] This case, for reasons discussed in part III, does not present, and we do not decide, the issue of the trial court's duty, if any, where the evidence presented is sufficient to make a finding that the person can be safely and effectively treated on an outpatient basis but neither party requests such a finding.

Rish asserts that the First Appellate District's recent decision in *May, supra*, 155 Cal.App.4th 350, supports his argument that the trial court was statutorily required to determine his suitability for outpatient treatment under section 2972, subdivision (d). He also contends that, at the time of the recommitment hearing, neither defense counsel nor the trial court could be presumed to have known the scope of the court's statutory duty, as the hearing was held prior to the *May* decision when the state of the law was still unclear. We do not, however, read *May* as supporting Rish's argument. This is because the issue in *May* was limited to whether the trial court had the authority under section 2972, subdivision (d) to order a mentally disordered offender to outpatient treatment in ruling on a recommitment petition. The *May* decision did not address whether there was a sua sponte duty to do so.

In *May*, the sole testifying witness at a section 2972 recommitment hearing was May's treating psychiatrist. (*May, supra*, 155 Cal.App.4th at p. 355.) The psychiatrist testified that, even though May still qualified as a mentally disordered offender, his treatment team believed he had earned an opportunity for community placement rather than continued treatment in the state hospital. (*Id.* at pp. 355–356.) The prosecutor, however, objected to the testimony about whether May was a proper candidate for outpatient treatment on the grounds that it was irrelevant to the issues to be decided at the recommitment hearing, and the trial court sustained the objection. (*Id.* at p. 356.) At the conclusion of the hearing, the court found that May met the requirements for continued involuntary treatment under section 2972 and ordered him recommitted to the state hospital. (155 Cal.App.4th at p. 356.) May's counsel then sought reconsideration of that ruling, arguing that the trial court had the authority to address at the recommitment hearing whether May should be placed in an outpatient treatment program. (*Id.* at pp. 356–357.) After the court denied reconsideration, May filed an appeal. (*Id.* at p. 357.)

The First Appellate District held that the trial court did have the authority, upon sustaining a section 2970 petition, to determine whether a mentally disordered offender was suitable for outpatient treatment under section 2972, subdivision (d). (*May, supra*, 155 Cal.App.4th at p. 359.) Additionally, it held that, in considering outpatient treatment, the trial court need not follow the procedures set forth in sections 1603 and 1604 of the Penal Code, which governed outpatient treatment for other types of mentally disordered offenders and required, among other things, supporting recommendations from both the inpatient treatment facility and the proposed community program. (155 Cal.App.4th at pp. 359–361.) Instead, "[u]nder the plain language of the statute, when the trial court sustains a section 2970 . . . petition for continued treatment of an MDO, the court has authority to release the MDO for

outpatient treatment so long as it finds 'there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis.' (§ 2972, subd. (d).)" (*Id.* at p. 359.) According to the First District, it was apparent that the trial court in *May* "failed to appreciate it had authority to order outpatient treatment" because "*despite May's request that it do so,* the court failed to make a finding under section 2972, subdivision (d) regarding May's suitability for outpatient placement." (*Id.* at p. 363, italics added.) The matter therefore was remanded to the trial court to make findings pursuant to section 2972, subdivision (d) as to whether May could be safely and effectively treated on an outpatient basis. (155 Cal.App.4th at p. 364.)

■ The decision in *May* thus stands for the proposition that the trial court has the authority under section 2972, subdivision (d) to determine whether a mentally disordered offender is suitable for outpatient treatment. It does not, however, support the conclusion that the trial court has a sua sponte duty to make such a determination. Unlike the defendant in *May*, Rish never argued to the trial court that he could be safely and effectively treated on an outpatient basis, nor did he seek a ruling on that issue at the recommitment hearing. Rather, defense counsel requested only that the trial court deny the petition to continue involuntary treatment on the grounds that Rish no longer qualified for commitment as a mentally disordered offender. Indeed, in his opening brief, Rish concedes that "neither appellant nor the prosecution focused its presentation of evidence directly on appellant's suitability for participation in an out-patient treatment program," and instead, "the entire focus of the trial was on whether appellant continued to qualify as a mentally disordered offender."

■ Accordingly, because Rish never sought a determination from the trial court as to whether he was suitable for outpatient treatment pursuant to section 2972, subdivision (d), he forfeited his claim that the trial court erred in failing to make such a ruling. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598] [although the terms "waiver" and "forfeiture" are often used interchangeably, " 'waiver is the "intentional relinquishment or abandonment of a known right" ' " whereas " 'forfeiture is the failure to make the timely assertion of a right' "]; *People v. Rowland* (1992) 4 Cal.4th 238, 259 [14 Cal.Rptr.2d 377, 841 P.2d 897] ["no review can be conducted" where the defendant fails to secure a ruling from the trial court as " '[t]he absence of an adverse ruling precludes any appellate challenge' "].)

III. *Rish Did Not Present Sufficient Evidence to Support a Finding That He Was Suitable for Outpatient Treatment*

Even assuming arguendo that the trial court had a sua sponte duty to determine whether Rish was suitable for outpatient treatment, Rish failed to

present sufficient evidence to support a finding under section 2972, subdivision (d) that he could be safely and effectively treated on an outpatient basis. (See, e.g., *People v. Miller* (1994) 25 Cal.App.4th 913, 919–920 [31 Cal.Rptr.2d 423] [the same standard of review used in determining a claim of insufficiency of the evidence in a criminal case applies to appellate review of mentally disordered offender proceedings].) The only evidence offered at the recommitment hearing that remotely related to the issue of outpatient treatment was Rish's testimony that, if released from the hospital, he would take all prescribed medications and would seek outpatient treatment on his own. This testimony alone, however, is insufficient to show that there was reasonable cause to believe that Rish was suitable for treatment on an outpatient basis. Even if accepted as true, such evidence does not come close to addressing how Rish intended to comply with outpatient treatment and how such treatment would be safe and effective.

On the other hand, there was ample evidence presented at the recommitment hearing to support a finding that Rish could not be safely and effectively treated on an outpatient basis. For instance, it was undisputed that, even though Rish currently was complying with his medication regimen, he had engaged in aggressive conduct toward others at the hospital within the past year and twice had to be placed in seclusion and restraints. It also was undisputed that Rish had tested positive for marijuana within the past year and that the use of such drugs could exacerbate the symptoms of his mental illness and decrease the effectiveness of his medication. Rish himself admitted that he needed the medication to control his mental illness and that, without it, he would suffer the symptoms of his illness and relapse again. In addition to this uncontroverted evidence, Dr. Plotkin, the only testifying expert, explained that he believed Rish had limited insight into his mental illness and would not comply with his medication regimen if released into the community. It was also Dr. Plotkin's opinion that Rish had a tendency to try to manipulate others through intimidation, which in turn demonstrated an inability to comply with the treatment program even in the controlled environment of the state hospital.

In sum, the record does not contain sufficient evidence to support a finding under section 2972, subdivision (d) that there was reasonable cause to believe that Rish could be safely and effectively treated on an outpatient basis. Therefore, the trial court did not err in ordering that Rish be recommitted to Atascadero State Hospital for continued involuntary treatment.

## DISPOSITION

The judgment is affirmed.

Perluss, P. J., and Woods, J., concurred.