[No. A116768. First Dist., Div. Three. Sept. 19, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM EDWARD PRESTON MAY, Defendant and Appellant.

COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Jill M. Thayer, Deputy Attorneys General, Plaintiff and Respondent.

OPINION

McGUINESS, P. J.—William Edward Preston May filed this appeal from an order recommitting him to Atascadero State Hospital as a mentally disordered offender (MDO). (Pen. Code, § 2972, subd. (c).) May does not challenge the sufficiency of evidence supporting his recommitment but instead argues the trial court abused its discretion in refusing to decide whether he should be released for outpatient treatment. The question squarely presented in this appeal, and apparently not addressed in any previous decision, is whether Penal Code section 2972, subdivision (d) authorizes the trial court to release an MDO for outpatient treatment without following the outpatient release procedures described in Penal Code section 1600 et seq.[1] We conclude section 2972, subdivision (d) describes a separate procedure for placing civilly committed MDO's on outpatient status, and the requirements of sections 1603 and 1604 do not apply. Accordingly, we remand for the trial court to consider whether May should be released for outpatient treatment.

## BACKGROUND

As a condition of his parole following a felony conviction for making terrorist threats (§ 422), May was involuntarily committed to the State Department of Mental Health (Department of Mental Health) as an MDO on January 19, 2004. (§ 2962.) He has remained committed in Atascadero State Hospital since that time. On September 19, 2006, the Sonoma County District Attorney filed a petition to extend May's involuntary treatment pursuant to section 2970. May waived his right to a jury trial, and the court held a hearing on the petition on January 19, 2007.

The only witness who testified at May's recommitment hearing was Joseph Abramson, M.D., his treating psychiatrist at Atascadero State Hospital. Abramson explained that May has been diagnosed with schizophrenia, paranoid type, which is a severe mental disorder. He experiences auditory and visual hallucinations that frequently carry themes of paranoia or persecution. He also tends to misconstrue cues from those around him and so, for example, will often misinterpret female gestures as expressions of sexual interest. May has suffered from psychotic illness since the mid-1980's or early 1990's. His symptoms fluctuate considerably, but at the time of the hearing May was "in fairly good shape." Nevertheless, Abramson testified May's mental disorder is not in remission, and he presents a substantial

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

danger of physical harm to others as a result of his disorder. Abramson based this opinion on May's extensive criminal history, with many crimes of force or violence, and his history of severe substance abuse. In particular, May's abuse of methamphetamine is problematic because this drug can induce psychotic symptoms, exacerbate underlying mental illness and increase the likelihood of a user's failure to comply with a psychotropic medication regimen.

Despite May's difficulties with substance abuse and medication noncompliance while "out in the community," Abramson testified that the treatment team held the opinion that May had earned an opportunity for community placement rather than continued treatment in the state hospital. He explained that when an individual can maintain clinical and behavioral stability in the hospital and address issues recommended by the conditional release program (CONREP), the staff believed the individual should be released into a community placement. May's treatment team had referred him to CONREP for outpatient placement, but, after screening May, CONREP rejected him.

The prosecutor objected to testimony about whether May was a proper candidate for outpatient treatment, arguing it was irrelevant to issues to be decided in the recommitment hearing. The trial court sustained the objection but asked what the procedure would be if May did seek a referral to outpatient treatment. The prosecutor responded that, under section 2964, the process had to start with the Department of Mental Health and the Board of Prison Terms (now Board of Parole Hearings). The court responded, "We are not there yet," and refused to allow questions from May's counsel about conclusions in a CONREP report.[2] At the close of the hearing, the court found May met the requirements for continued involuntary treatment under section 2970. Based on these findings, on January 23, 2007, the court ordered May recommitted to Atascadero State Hospital for a period of one year.

On February 13, 2007, May's counsel sought reconsideration of this ruling. He argued that the court had authority to address at the recommitment hearing whether May should be placed in outpatient treatment, and he urged the court to make such an order based on Abramson's testimony that the treatment team unanimously recommended such a disposition. The prosecutor opposed the court making a ruling on outpatient placement without further

---

[2] May's appellate counsel filed a motion to strike a separately bound volume of the clerk's transcript labeled "Secret Documents," which consists of CONREP liaison reports filed in the superior court between April 2004 and January 2007. Upon due consideration, the motion to strike is denied, and the documents shall remain filed under seal in this court.

input from CONREP. After deciding that the matter should be referred to CONREP for a recommendation and further hearing, counsel and the court debated whether May had to initiate a separate proceeding, or whether the court should grant reconsideration and reopen May's recommitment trial to decide the issue. Ultimately, the court denied reconsideration but granted what it construed as May's motion to consider outpatient placement, and the matter was continued for 30 days in anticipation of a CONREP report. May filed a timely appeal from the order extending his MDO commitment. The record does not indicate what further proceedings, if any, the trial court entertained concerning May's placement.

## DISCUSSION

May argues the trial court erred in declining to reconsider its ruling on the recommitment petition. Specifically, May contends the court did not realize it had authority pursuant to section 2972, subdivision (d) to place him in outpatient treatment and erred in failing to exercise its discretion on this issue. Based on Abramson's trial testimony, May claims he is entitled to immediate placement in an appropriate outpatient program. In the alternative, he urges us to remand the case so that the trial court may exercise its discretion pursuant to section 2972, subdivision (d). Because these arguments raise issues of statutory construction, we apply a de novo standard of review. (*People v. Morris* (2005) 126 Cal.App.4th 527, 535 [23 Cal.Rptr.3d 881].)

### I. *MDO Statutory Scheme*

■ The Legislature enacted the MDO law (§ 2960 et seq.) "to protect the public from certain prisoners with dangerous, treatable mental disorders and to provide treatment for those prisoners." (*Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 877 [76 Cal.Rptr.2d 841].) Pursuant to section 2962, MDO prisoners[3] who have committed specified violent crimes may be required to submit to mental health treatment as a condition of their release on parole. (*Terhune v. Superior Court, supra,* 65 Cal.App.4th at p. 877.) This treatment must be inpatient "unless the State Department of Mental Health certifies to the Board of Prison Terms that there is reasonable cause to believe the parolee can be safely and effectively treated on an outpatient basis, in which case the Board of Prison Terms shall permit the State Department of

---

[3] To qualify as an MDO for purposes of section 2962, the following requirements must be met: (1) the prisoner has a severe mental disorder that is not in remission, or cannot be kept in remission without treatment; (2) the severe mental disorder was a cause or aggravating factor in the crime for which the prisoner was sentenced; (3) the prisoner has been in treatment for the disorder for at least 90 days within the year prior to release on parole; and (4) the prisoner represents a substantial danger of physical harm to others because of the severe mental disorder. (§ 2962, subds. (a)–(d).)

Mental Health to place the parolee in an outpatient treatment program specified by the State Department of Mental Health." (§ 2964, subd. (a).) The Department of Mental Health must consult with the local outpatient treatment program before placing a parolee in such a program. (*Ibid.*)

The MDO law sets forth a separate set of procedures for continuing an involuntary commitment after the termination of parole or, if a prisoner did not accept treatment as a condition of parole, release from prison. (§§ 2970–2972.1; see *People v. Allen* (2007) 42 Cal.4th 91, 99–100 [64 Cal.Rptr.3d 124] [describing civil recommitment procedures after termination of parole or prisoner's release].) Upon the recommendation of the state hospital or community program treating a parolee whose term is set to expire, the district attorney of the county of commitment may file a petition to continue the person's involuntary treatment for one year. (§ 2970.) Petitions to extend the commitment for additional one-year terms may be filed indefinitely, so long as the person's severe mental disorder is not in remission and causes the person to represent a substantial danger of physical harm to others. (§ 2972, subd. (e).)

Section 2972 lays out the procedures to be followed with regard to such petitions for recommitment, i.e., for continued involuntary commitment after termination of the MDO's parole or prison term. A hearing on the recommitment petition is held before the trial court or a jury, and the subject's MDO status must be proved beyond a reasonable doubt. (§ 2972, subd. (a).) If the court or jury finds that the patient meets the requirements of the MDO law—that is, the patient has a severe mental disorder that is not in remission or cannot be kept in remission without treatment and, by reason of this disorder, represents a substantial danger of physical harm to others—the court must order the patient recommitted to the inpatient facility or outpatient program in which he or she was previously being treated. (§ 2972, subd. (c).)[4] The term of a renewed commitment is one year, and, with some exceptions, time spent on outpatient status does not count toward this term. (§ 2972, subd. (c).)

II. *Outpatient Release Under Section 2972, Subdivision (d)*

Subdivision (c) of section 2972 states that, if the MDO findings are made, "the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed . . . ." The Attorney General suggests this provision limits the trial

---

[4] In the case of a section 2970 petition filed for a person who was previously in prison, the court orders the person committed to the Department of Mental Health rather than to a facility or program. (§ 2972, subd. (c).)

court's ability to order a new placement for an MDO at the conclusion of a section 2972 hearing. However, the next subdivision of the statute indicates an alternate disposition is possible. Section 2972, subdivision (d) states, in full: "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis. Except as provided in this subdivision, the provisions of Title 15 (commencing with Section 1600) of Part 2, shall apply to persons placed on outpatient status pursuant to this paragraph. The standard for revocation under Section 1609 shall be that the person cannot be safely and effectively treated on an outpatient basis."

Read in context with the rest of section 2972, subdivision (d) appears to describe a disposition available to the trial court at the conclusion of a recommitment hearing. Under the plain language of the statute, when the trial court sustains a section 2970 or section 2972, subdivision (e) petition for continued treatment of an MDO, the court has authority to release the MDO for outpatient treatment so long as it finds "there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis." (§ 2972, subd. (d).) Unlike section 2964, which governs the placement of a *parolee* on outpatient status, section 2972, subdivision (d) does not oblige the court to obtain a certification from the Department of Mental Health as to whether the MDO can be safely and effectively treated on an outpatient basis. (See § 2964, subd. (a).) Presumably, the Legislature believed such an inquiry would typically be made during examination of treatment professionals at the recommitment hearing. Whereas the court has no role in outpatient placements for parolees under section 2964 (see § 2964, subd. (a) [describing procedures to be completed by the Department of Mental Health and the Board of Prison Terms]), section 2972, subdivision (d) clearly describes such a role for trial courts presiding over recommitment hearings.

Based on the statute's reference to "the provisions of Title 15" (§ 2972, subd. (d)), the Attorney General argues outpatient placements of recommitted MDO's must follow the procedures outlined for other types of offenders in section 1604. Section 1604 provides that when the director of a state hospital or treatment facility advises the court that a committed person may be eligible for outpatient status, the court must obtain a recommendation on outpatient eligibility and a recommended treatment plan from the community program director. (§ 1604, subds. (a), (b).) The court then conducts a hearing, with notice provided to the victim or the victim's next of kin, to approve or disapprove the recommendation. (§§ 1603, subd. (a)(3), 1604, subds. (c), (d).) Before outpatient status may be granted, the state hospital or treatment facility

must advise the court that the defendant will no longer be a danger to the health and safety of others, including himself, and will benefit from outpatient status. (§ 1603, subd. (a)(1).) The community program director must also advise the court that the defendant will benefit from outpatient status and must identify an appropriate plan of supervision and treatment for the defendant. (§ 1603, subd. (a)(2).)

Title 15 (§ 1600 et seq.) governs outpatient status for mentally disordered and developmentally disabled offenders. Section 1600 provides that the title applies to persons found not guilty of a crime by reason of insanity (§ 1026), persons found to be mentally disordered sex offenders (Welf. & Inst. Code, former § 6300), mentally incompetent defendants (§ 1370.1) and sexually violent predators (Welf. & Inst. Code, § 6600). The Legislature has created a separate statutory scheme for outpatient placement of MDO's. Section 2964 specifically states that "the procedural provisions of Title 15 *shall not apply*" to outpatient placements of MDO parolees, and section 2972, subdivision (d) states that provisions of title 15 apply to recommitted MDO's "[*e*]*xcept as provided in this subdivision.*" (Italics added.) The only provisions of title 15 that appear to be inconsistent with section 2972, subdivision (d) concern the procedures for placing a committed person on outpatient status. Whereas outpatient release under title 15 requires supporting recommendations from the director of the state hospital or treatment facility and from the director of a community program, and requires the court to consider these recommendations and a specific treatment plan for the committed person at a separately noticed hearing (§§ 1603, 1604), section 2972, subdivision (d) authorizes the court to release an MDO on outpatient status after a recommitment hearing so long as the court finds reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis.

The Attorney General urges us to read into section 2972 the procedural requirements for initiating outpatient placement described in section 1604, but this interpretation would erase the differences between the statutes and render nugatory the directive in section 2972, subdivision (d) that provisions of title 15 shall apply "[e]xcept as provided in this subdivision." "An appellate court should be 'loathe to construe a statute which has the effect of "adding" or "subtracting" language.' [Citation.]" (*People v. Pecci* (1999) 72 Cal.App.4th 1500, 1504 [86 Cal.Rptr.2d 43], fn. omitted; see also *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894 [113 Cal.Rptr.2d 483].) The "[e]xcept as provided in this subdivision" clause indicates some provision of section 2972, subdivision (d) is an exception to the rules and procedures set forth in title 15. Logically, considering the statutes in context, the exception concerns the means by which an offender is placed on

outpatient status. If the court makes the requisite finding under subdivision (d), it may release a civilly committed MDO for outpatient treatment at a recommitment hearing without having to engage in a formal process of soliciting recommendations and treatment plans. Once the MDO has been placed on outpatient status pursuant to section 2972, subdivision (d), however, his or her placement will be subject to the same rules as the outpatient placements of other mentally disordered or developmentally disabled offenders. This interpretation is also consistent with the statement in subdivision (d) that title 15 provisions will apply "to persons placed on outpatient status *pursuant to this paragraph.*" (§ 2972, subd. (d), italics added.) In other words, civilly committed MDO's may be placed on outpatient status based on section 2972, subdivision (d)—i.e., the court's finding of reasonable cause to believe the MDO can be safely and effectively treated on an outpatient basis—but, once placed on this status, they will be treated the same as other outpatients under title 15.

The statutory language in certain provisions of title 15 bolsters our conclusion. Nearly all the statutes in title 15 use the word "person" to describe the individual receiving outpatient treatment. (See, e.g., §§ 1600.5 [providing time spent on outpatient status does not count toward actual custody], 1606 [defining period of outpatient status as one year], 1607 [describing procedures for restoration of sanity], 1608–1610 [describing procedures to revoke or discontinue outpatient status], 1611 [limiting travel out of state].) The notable exceptions are sections 1602 and 1603, which describe the conditions that must be satisfied for outpatient status placement, and section 1604, which sets forth the hearing procedures for such placement. Although they sometimes use the word "person," these statutes also repeatedly refer to the committed individual as a "defendant." (See §§ 1602, subd. (a)(1), (2), 1603, subd. (a)(1), (2), 1604, subds. (b), (d).)[5] As the Legislature is presumably well aware, an MDO whose involuntary commitment is extended beyond the length of his or her prison sentence—through civil proceedings—is no longer a criminal "defendant."

█ Given that title 15 and section 2964 require consultation with local programs and the development of a treatment plan before their subjects may be placed on outpatient status, the Attorney General asserts "it is inconceivable that section 2972, subdivision (d) permits a court to release" a civilly committed MDO on outpatient status without such requirements. However,

---

[5] Section 1605, regarding supervision of persons placed on outpatient status, also uses the term "defendant," but only with respect to the contents of status reports required to be filed at 90-day intervals by the person's outpatient treatment supervisor. (See § 1605, subd. (d).)

the Legislature has established a separate statutory scheme for handling the inpatient and outpatient treatment of MDO's, and it would be consistent with this separate scheme for the Legislature to prescribe different procedures for the outpatient release of civilly committed MDO's. (Cf. § 1611 [referring to a person "who is on outpatient status pursuant to this title [15] or Section 2972," suggesting the statutes provide independent bases for obtaining outpatient status].) Further support for the notion that the Legislature intended separate rules to apply to outpatient treatment of civilly committed MDO's may be found in the enactment of section 2972.1, which sets forth specific, detailed rules for the annual review of commitments of MDO's who have been placed on outpatient status pursuant to section 2972, subdivision (d). (See *People v. Morris, supra,* 126 Cal.App.4th at pp. 544–545 [describing these procedures and contrasting them with procedures for inpatients under §§ 2970 & 2972].) This process involves input from the MDO's community program director (§ 2972.1, subds. (a), (b)), but the court's decision regarding whether to renew its approval of outpatient status, order the MDO confined in a treatment facility or discharge the MDO from commitment is to be based on section 2972, subdivision (c) (requirements for finding person is an MDO) and subdivision (d) (requirements for ordering release on outpatient status). (§ 2972.1, subd. (e).)

■ Furthermore, we do not believe it would be "inconceivable" for the Legislature to employ a more streamlined process for MDO's held by a civil commitment only, as compared with other offenders. The literal meaning of statutory language may sometimes be disregarded to avoid absurd results, but this exception should be used sparingly and only in extreme cases. (*People v. Pecci, supra,* 72 Cal.App.4th at p. 1507.) ■ Unlike persons who are incompetent to stand trial or found not guilty by reason of insanity, for example, a civilly committed MDO who is released to outpatient status pursuant to section 2972, subdivision (d) has served the sentence imposed for his or her crime, and at this point the MDO is being held by the state solely for purposes of ensuring public safety and appropriate treatment for the MDO. The Legislature may have intended to encourage outpatient treatment for such offenders as a bridge to their ultimate release. (See McLeod, *Catch-22: An Inquiry Into the Competency of Mentally Disordered Offenders to Waive Their Right to Recommitment Hearings* (2001) 32 McGeorge L.Rev. 593, 595 [suggesting § 2972, subd. (d) "encourages that MDO's be placed on outpatient status"].)[6] Or the Legislature may have been motivated by a desire to conserve state resources. The state is required to provide MDO's with

---

[6] The parties have not cited, nor have we found, any extrinsic sources shedding light on legislative intent with respect to section 2972, subdivision (d).

annual hearings to determine whether their continued commitment is appropriate. (§ 2972, subds. (a), (c); *People v. Morris, supra,* 126 Cal.App.4th at p. 539.) Evidence about an MDO's suitability for outpatient treatment can be adduced from treating staff who testify at this hearing and from CONREP evaluations or testimony. By authorizing the court to order outpatient placement as a disposition at annual civil recommitment hearings, the Legislature avoided the need for separate hearings devoted to outpatient release issues during an MDO's term of commitment.

### III. *Remedy*

■ Upon review of the proceedings below, it is apparent to us that the trial court failed to appreciate it had authority to order outpatient treatment for May as part of the disposition on the petition to extend his involuntary treatment. As a result, despite May's request that it do so, the court failed to make a finding under section 2972, subdivision (d) regarding May's suitability for outpatient placement. This was error, and we shall remand for the court to make appropriate findings and exercise its discretion pursuant to section 2972, subdivision (d).

Although May argues his release to outpatient treatment is mandated by the undisputed testimony of Dr. Abramson, such a result would be unfair and potentially dangerous to public safety. The district attorney had no notice before the recommitment hearing of May's intention to seek outpatient placement, and thus the prosecution had no opportunity to submit evidence contradicting Abramson's views. Although Abramson was allowed to testify about why he disagreed with CONREP's rejection of May, the CONREP reports were apparently not admitted in evidence and no one from CONREP testified to explain the basis for the program's decision. As a result, the evidence presented at the section 2972 hearing was one-sided.

■ Although the court announced its intention to conduct further proceedings to consider May's request for outpatient status, the record contains no indication of whether such proceedings have taken place, or of their outcome.[7] In any event, for purposes of remand and for future cases, this opinion clarifies that trial courts have authority to order outpatient placement for civilly committed offenders under section 2972, subdivision (d), and in doing so they need not follow the procedures described in sections 1603 and 1604.

---

[7] Even the trial court was uncomfortable with putting the matter over for a new hearing, stating, "We will try it. I don't feel good about the outcome." Counsel advised this court at oral argument that further proceedings had been suspended pending the outcome of this appeal.

## DISPOSITION

The order extending May's involuntary commitment pursuant to section 2972, subdivision (c) is affirmed; however, the case is remanded for the trial court to make further findings pursuant to section 2972, subdivision (d) regarding whether there is reasonable cause to believe May can be safely and effectively treated on an outpatient basis.

Siggins, J., and Horner, J.,* concurred.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.