166 Cal.App.4th 238 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
MARSHA BRANDON, Defendant and Appellant.
No. E042885.
Court of Appeals of California, Fourth District, Division Two.
August 25, 2008.
*242 Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr.; Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RICHLI, J.
The People filed a petition to commit defendant Marsha Brandon for treatment as a mentally disordered offender (MDO). When the petition was filed, defendant was in an outpatient treatment program as a condition of parole. Before trial, however, she absconded from that program. When she was reapprehended, she was kept in jail; the trial court denied her motion to be placed back on outpatient status. The People then filed a motion to revoke her outpatient status, which the trial court granted. After a jury trial, in which the trial court allowed defendant to represent herself, she was found to be an MDO and committed to an inpatient facility for one year.
Defendant now contends that the trial court erred by allowing her to represent herself. We will conclude, however, that this contention is moot in light of the fact that defendant's initial one-year commitment has expired, and she has since been recommitted for a further one-year period.
*243 Defendant also contends that the trial court erred by revoking her outpatient status and by committing her as an inpatient instead, for three reasons:
1. Because defendant was an outpatient when the commitment petition was filed, the trial court was required to commit her, if at all, as an outpatient.
2. The People were allowed to revoke defendant's outpatient status pursuant to Penal Code section 1609, rather than Penal Code section 2972.1.
3. The motion to revoke defendant's outpatient status was untimely because it was filed after defendant's outpatient period had already expired.
We will conclude that these contentions are not moot. Neither, however, are they meritorious. Hence, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND
Defendant has been diagnosed as suffering from paranoid schizophrenia. In 2000, she pleaded guilty to stalking (Pen. Code, § 646.9) and making a criminal threat (Pen. Code, § 422) and was sentenced to prison. On May 1, 2003, she was placed on parole. As a condition of her parole (Pen. Code, § 2962), she was committed to Patton State Hospital (Patton)i.e., an inpatient programfor treatment.
On May 23, 2005, defendant was placed in the conditional release program. (Welf. & Inst. Code, § 4360.) This was an outpatient program; it allowed her to live in the community, in a board and care home.
On February 14, 2006, the People filed a petition to commit defendant for further involuntary treatment. (Pen. Code, § 2970 et seq.) Defendant's parole period was due to terminate on May 1, 2006. Defendant's attorney, however, repeatedly waived time for trial; on June 23, 2006, over defendant's objection, he waived time "to next hearing date plus 30 days beyond."
On July 8, 2006, defendant absconded from her outpatient program. On November 16, 2006, she was reapprehended. She was held in county jail. On December 4, 2006, she filed a motion to be placed back into the outpatient program pending a trial on the commitment petition. She argued that the only way the trial court could revoke her outpatient status was by granting either a request by the director of the outpatient program, pursuant to Penal Code section 1608, or a motion by the prosecution, pursuant to Penal Code section 1609. The trial court denied the motion.
*244 On December 18, 2006, the People filed a motion, purportedly pursuant to Penal Code section 1609, to revoke defendant's outpatient status and have her placed at Patton. In support of the motion, a designee of the director of the outpatient program testified that, in May 2006, defendant had refused to renew her contract with the program, which meant that she could no longer participate. Moreover, even if she did renew her contract, she was no longer suitable for the program because her psychiatric problems had worsened, and the staff of the program could no longer protect the public from her. On February 6, 2007, after an evidentiary hearing, the trial court granted the motion.
On February 28, 2007, defendant made a Faretta motion.[1] On March 7, 2007, the trial court granted the motion. On March 15, 2007, a jury trial began. On April 5, 2007, the jury found that defendant met the criteria for being an MDO. The trial court ordered defendant committed for one year, from May 1, 2006, through May 1, 2007.

II

MOOTNESS
Upon reviewing the record, we wondered whether this appeal was moot. We invited the parties to submit further briefs addressing this issue. Having received and considered those briefs, we conclude that the appeal is only partially moot.
Defendant's commitment period (May 1, 2006, through May 1, 2007) has now expired. Even if we were to agree that defendant was improperly committed, we could not undo that commitment. Accordingly, to the extent that defendant's contentions invoke no appellate relief other than reversal of the commitment order, her appeal is moot. (People v. Merfield (2007) 147 Cal.App.4th 1071, 1074-1075 [54 Cal.Rptr.3d 834]; see also In re Lemanuel C. (2007) 41 Cal.4th 33, 38, fn. 4 [58 Cal.Rptr.3d 597, 158 P.3d 148] [juvenile extended detention proceeding under Welf. & Inst. Code, § 1800]; People v. Hurtado (2002) 28 Cal.4th 1179, 1186 [124 Cal.Rptr.2d 186, 52 P.3d 116] [sexually violent predator proceeding].)
Defendant's appeal is also moot to the extent that she is seeking a retrial on the initial commitment petition. For example, she contends that the trial court erred by granting her Faretta motion. If she is correct, her appellate remedy would be reversal and a remand for a retrial of the commitment *245 hearing. While this appeal was pending, however, the People filed a petition to recommit defendant for a further one-year period. (Pen. Code, § 2972, subd. (e).) The People have represented to us that she was in fact recommitted for a period from November 11, 2007, through November 11, 2008, and she was ordered housed as an inpatient at Patton. Because defendant has already been recommitted, there has already been a finding that she is still an MDO; a retrial would be an idle act. In essence, defendant has already received the appellate remedy that she is seeking. We conclude that this contention is moot.
On the other hand, defendant also contends that the trial court erred (in three respects) by revoking her outpatient status and committing her to an inpatient program instead. As we will discuss further in part IV, post, there is a statutory presumption that an MDO who is in an inpatient program when a recommitment petition is filed should be recommitted to an inpatient program, and an MDO who is in an outpatient program when a recommitment petition is filed should be recommitted to an outpatient program. (Pen. Code, § 2972, subds. (c), (e).) Accordingly, if the trial court erroneously committed defendant to an inpatient program, that error could have infected her subsequent recommitment by raising a presumption that she should have been recommitted to an inpatient program rather than an outpatient program. (Cf. People v. Fernandez (1999) 70 Cal.App.4th 117, 134-135 [82 Cal.Rptr.2d 469] [contention that trial court lacked jurisdiction to grant commitment petition not moot because decision could affect trial court's jurisdiction to grant recommitment petition].) At a minimum, on this record, we cannot say that this did not happen. We therefore conclude that these three contentions have not been shown to be moot.

III

STATUTORY BACKGROUND
(1)In general, the MDO statutes (Pen. Code, §§ 2960-2978) provide for the treatment of certain convicted criminal defendants who are found to have a severe mental disorder that makes them particularly dangerous to others. If necessary, the treatment may be involuntary, and it may continue beyond the date when the defendant would otherwise have been released.
(2)The MDO statutes contemplate two distinct treatment phasesone during parole, and one continuing after the end of the parole period. These phases differ in several ways; most significantly for our purposes, they differ with respect to how outpatient status may be granted and revoked.
To make matters still more complicated, as we will discuss in more detail below, the MDO statutes governing the postparole phase partially incorporate *246 Penal Code section 1600 et seq., which also deal with how outpatient status may be granted and revoked. By contrast, the MDO statutes governing the parole phase exclude the operation of Penal Code section 1600 et seq.

A. Treatment As a Condition of Parole.

(3)A defendant who meets the criteria for being an MDO can be required to receive mental health treatment as a condition of parole. (Pen. Code, § 2962.) These criteria require that:
(1) The defendant must have been convicted of one of several specified serious crimes. (Pen. Code, § 2962, subds. (b), (e)(2).)
(2) The defendant must have a severe mental disorder that is not in remission or cannot be kept in remission without treatment. (Pen. Code, § 2962, subd. (a).)
(3) As a result of the severe mental disorder, the defendant must represent a substantial danger of physical harm to others. (See Pen. Code, § 2962, subd. (d)(1); see also Cal. Code Regs., tit. 15, § 2571, subd. (f).)
(4) The defendant must have been in treatment for the severe mental disorder for at least 90 days within the year prior to parole. (Pen. Code, § 2962, subd. (c).)
(5) The severe mental disorder must have been a cause of or an aggravating factor in the commission of the qualifying crime. (Pen. Code, § 2962, subd. (b).)
(4)First, three specified mental health professionals (or, under some circumstances, four) must all concur that the defendant meets these MDO criteria. (Pen. Code, § 2962, subd. (d).) If the defendant disagrees with this determination, he or she may request a hearing before the Board of Parole Hearings. (Pen. Code, § 2966, subd. (a).) Then, if the defendant disagrees with the determination by the Board of Parole Hearings, he or she may request a hearing in superior court, including a jury trial. (Pen. Code, § 2966, subd. (b).)
(5)Treatment as a condition of parole is normally inpatient. (Pen. Code, § 2964, subd. (a).) However, under Penal Code section 2964, the State Department of Mental Health may place the defendant in an outpatient program, if it finds that this can be done safely and effectively. (Ibid.) If it does not place the defendant in an outpatient program, the defendant may request a placement hearing before the Board of Parole Hearings. (Pen. Code, § 2964, subd. (b).)
*247 Penal Code section 2964 also governs the revocation of outpatient status. If the director of the defendant's outpatient program decides that the defendant can no longer be safely or effectively treated in the program, the defendant must be placed in an inpatient program. The defendant is then entitled to a revocation hearing within 21 days before the State Department of Mental Health. (Pen. Code, § 2964, subd. (a).)

B. Treatment After the Termination of Parole.

(6)Once a defendant has been found to be an MDO and has been made subject to treatment as a condition of parole, he or she may also be involuntarily committed for additional treatment at the end of the parole period. (Pen. Code, §§ 2970, 2972.)
First, the district attorney must file a petition for continued involuntary treatment. (Pen. Code, § 2970.) The defendant is entitled to a jury trial on the petition. (Pen. Code, § 2972, subd. (a).) The trial must commence at least 30 days before the defendant would otherwise have been released, unless the defendant waives time or unless good cause is shown. (Pen. Code, § 2972, subd. (a).) If the trier of fact finds that the defendant still has a severe mental disorder that is not in remission or cannot be kept in remission without treatment and that, as a result of the severe mental disorder, the defendant still represents a substantial danger of physical harm to others, "the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed, or committed to the State Department of Mental Health if the person was in prison." (Pen. Code, § 2972, subd. (c).)
Penal Code section 2972, subdivision (d) further provides: "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."
(7)Outpatient status may be granted for up to one year. (Pen. Code, § 2972.1, subd. (a).) The MDO statutes do not expressly address how or even whether outpatient status may be revoked during this period (except to the extent that Pen. Code, § 2972, subd. (d) incorporates Pen. Code, § 1600 et seq. by reference, as we will discuss in pt. IIIC, post).
Sometime before the end of the outpatient period, the director of the outpatient program must recommend that the defendant be either (1) placed on inpatient status, (2) continued on outpatient status, or (3) discharged. (Pen. Code, § 2972.1, subd. (b); see also id., subd. (a).) The defendant can either *248 accept the recommendation or demand a hearing, including a jury trial. (Pen. Code, § 2972.1, subds. (c), (d), (e).)

C. Treatment of Other Mentally Impaired Offenders.

Penal Code section 1600 et seq. (general outpatient statutes) provide for the outpatient treatment of certain other mentally impaired offenders. Specifically, by their terms, they apply to (1) persons found incompetent to stand trial (Pen. Code, § 1367 et seq.), (2) persons found not guilty by reason of insanity (Pen. Code, § 1026), (3) mentally disordered sex offenders (Welf. & Inst. Code, former § 6300 et seq., added by Stats. 1967, ch. 1667, § 37, p. 4107, repealed by Stats. 1981, ch. 928, § 2, p. 3485), and (4) sexually violent predators (Welf. & Inst. Code, § 6600 et seq.). (Pen. Code, § 1600.)
Under the general outpatient statutes, outpatient status may be granted for up to one year. (Pen. Code, § 1606.) During the outpatient period, either the director of the outpatient program (Pen. Code, § 1608) or the prosecutor (Pen. Code, § 1609) can file a request to revoke the defendant's outpatient status. The trial court must hold a hearing and then must either grant or deny the request. (Pen. Code, §§ 1608, 1609.)
Sometime before the end of the outpatient period, the director of the outpatient program must recommend that the defendant be either (1) placed on inpatient status, (2) continued on outpatient status, or (3) discharged. The trial court must hold an evidentiary hearing, then choose the appropriate disposition. (Pen. Code, § 1606.)
The general outpatient statutes do not apply to MDO's of their own force. However, the MDO statutes refer to them twice.
First, Penal Code section 2964, subdivision (a) provides that "the procedural provisions of [the general outpatient statutes] shall not apply ..." to a defendant who has been made subject to treatment as a condition of parole. (Italics added.)
Second, Penal Code section 2972, subdivision (d) provides that the general outpatient statutes "shall apply to persons placed on outpatient status pursuant to this paragraph." (Italics added.)

*249 IV

THE TRIAL COURT'S AUTHORITY TO COMMIT DEFENDANT TO AN INPATIENT PROGRAM
Defendant contends that the trial court could commit her, if at all, only to an outpatient program, because she was in an outpatient program when the petition was filed.
Defendant relies on Penal Code section 2972, subdivision (c), which, as relevant here, provides that, if the court or jury finds that the defendant is an MDO, "the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed, or committed to the State Department of Mental Health if the person was in prison." (Italics added.)
This provision, however, must be construed together with Penal Code section 2972, subdivision (d), which provides: "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis. Except as provided in this subdivision, the provisions of [the general outpatient statutes] shall apply to persons placed on outpatient status pursuant to this paragraph."
(8) It has been held that this subdivision gives the trial court an alternative way of placing an MDO on outpatient status. In other words, if the defendant was in inpatient treatment when the petition was filed, under Penal Code section 2972, subdivision (c), the trial court would have no choice but to commit the defendant to inpatient treatment. Under Penal Code section 2972, subdivision (d), however, the trial court has the option of committing that same defendant to outpatient treatment. (People v. May (2007) 155 Cal.App.4th 350, 358-362 [65 Cal.Rptr.3d 873].)
We also read it, however, as giving the trial court an alternative way of placing an MDO on inpatient status. By negative implication, it means that a person need not be released on outpatient status if the committing court finds no reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis.
A contrary interpretation would mean that, if the MDO is on inpatient status, or even in prison, when the petition is filed, the trial court has the option of placing him or her on outpatient status; however, if the MDO is on outpatient status when the petition is filed, the trial court has no option except *250 to place him or her on outpatient status, no matter what has happened since the petition was filed. This would be absurd.
We therefore conclude that the trial court did not err by committing defendant to an inpatient program.

V

FAILURE TO PROCEED UNDER PENAL CODE SECTION 2972.1
Defendant contends that the trial court erred by granting the People's motion to revoke her outpatient status because the People proceeded under Penal Code section 1609 rather than Penal Code section 2972.1.
Defendant forfeited the asserted error by failing to raise it below. In her opposition to the prosecution's motion under Penal Code section 1609, she never once argued that the prosecution had to proceed under Penal Code section 2972.1. Indeed, defendant affirmatively invited the asserted error by arguing, in support of her earlier motion to be placed back on outpatient status pending trial, that the prosecution had to proceed pursuant to Penal Code section 1609.
(9)In her reply brief, defendant argues that, as a result of the failure to proceed under Penal Code section 2972.1, the trial court lacked "fundamental jurisdiction...." It is axiomatic that a lack of fundamental jurisdiction cannot be waived or forfeited. (People v. Tindall (2000) 24 Cal.4th 767, 776, fn. 6 [102 Cal.Rptr.2d 533, 14 P.3d 207].) "`"[L]ack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.]' [Citation.] By contrast, when a court has jurisdiction of the subject matter and the parties, actions in substantial disregard of constitutional or statutory limitations, or that deny fundamental rights or defenses, are acts in excess of jurisdiction. [Citation.]" (People v. Ramirez (2008) 159 Cal.App.4th 1412, 1426 [72 Cal.Rptr.3d 340], quoting People v. American Contractors Indemnity Co. (2004) 33 Cal.4th 653, 660 [16 Cal.Rptr.3d 76, 93 P.3d 1020], quoting Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) Here, it is undisputed that the trial court had the authority to revoke defendant's outpatient status; her complaint is merely that it disregarded statutory limitations on that power. This claim could be forfeited, and was.
*251 Defendant also argues that "the question presented is one of pure law." Admittedly, "[t]his court has discretion to decide a pure question of law based on undisputed facts. [Citation.]" (People v. Brown (1996) 42 Cal.App.4th 461, 471 [49 Cal.Rptr.2d 652] [Fourth Dist., Div. Two].) In this case, however, because the asserted error could have been easily cured or avoided if raised promptly, we choose not to exercise that discretion.
(10) In any event, separately and alternatively, the trial court did not err. Penal Code section 2972.1 does not apply until after the defendant has been committed for continued treatment following the expiration of the parole period, pursuant to Penal Code section 2972. When the trial court revoked defendant's outpatient status, she had been committed as a condition of parole, pursuant to Penal Code section 2962; she had not yet been committed postparole pursuant to Penal Code section 2972.
Admittedly, Penal Code section 2972.1, subdivision (a) refers to the procedure to be followed not only for "persons committed pursuant to Section 2972," but also "at the end of a period of outpatient status approved by the court...." Thus, we may assume, without deciding, that it would apply to a defendant who has been made subject to treatment as a condition of parole, provided the defendant sought judicial review of that decision and a court ultimately confirmed it. (Pen. Code, § 2966, subd. (b).) Here, however, defendant's outpatient status had not yet been confirmed by a court. In May 2003, she had been made subject to treatment as a condition of parole and committed to an inpatient program, without any court action. In May 2005, she had been placed in an outpatient program, evidently by the State Department of Mental Health (see Pen. Code, § 2964, subd. (a)); there is no indication that a court was involved. Accordingly, Penal Code section 2972.1 did not apply.
We therefore conclude that the trial court did not err by failing to proceed under Penal Code section 2972.1.

VI

THE TIMELINESS OF THE REVOCATION PETITION
Defendant contends that the trial court erred by granting the People's motion to revoke her outpatient status under Penal Code section 1609 because the motion was untimely.
Having held that the People were not required to proceed under Penal Code section 2972.1, we note that they were not required to proceed under Penal Code section 1609, either. Once again, defendant was still being treated as a *252 condition of parole. Hence, revocation of her outpatient status was governed by Penal Code section 2964, not Penal Code section 1609. Under Penal Code section 2964, the director of a parolee's outpatient program can revoke the parolee's outpatient status.[2] (Pen. Code, § 2964, subd. (a).) The parolee is then entitled to a revocation hearing before the State Department of Mental Health. (Pen. Code, § 2964, subd. (a).) Defendant, however, never objected to proceeding under Penal Code section 1609, nor to the lack of an administrative hearing, and she has long since forfeited any such objection.
Penal Code section 1609, as relevant here, provides: "If at any time during the outpatient period ... the prosecutor is of the opinion that the person is a danger to the health and safety of others while on that status, the prosecutor may petition the court for a hearing to determine whether the person shall be continued on that status." (Italics added.) Defendant contends that the prosecution's revocation petition, filed on December 18, 2006, was filed after her outpatient period had expired.
(11) Defendant forfeited this contention, too, by failing to raise it in the trial court. "[I]t is `intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' [Citations.]" (People v. Charles (1985) 171 Cal.App.3d 552, 563 [217 Cal.Rptr. 402], quoting Lindsay-Strathmore I. Dist. v. Superior Court (1920) 182 Cal. 315, 338 [187 P. 1056].) Moreover, defendant affirmatively invited the asserted error by filing a motion on December 4, 2006, to be placed back in the conditional release programi.e., to remain on outpatient statuspending trial. We discuss her contention on the merits solely as an alternative ground for affirmance.
Defendant was required to submit to treatment as a condition of parole. On May 1, 2003, she was placed on parole. On May 23, 2005, she was placed on outpatient status. Accordingly, not only her three-year parole period, but also her initial outpatient period, were both due to expire on May 1, 2006. (See Pen. Code, § 3000, subd. (b)(1), (2).)[3] At that point, defendant would have been entitled to unconditional release.
*253 Meanwhile, however, the People filed a petition to commit defendant for further treatment. Once such a petition has been filed, a trial on the petition must "commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown." (Pen. Code, § 2972, subd. (a), italics added.) Thus, if the defendant does waive time, or if the trial court does find good cause, the defendant is not entitled to be released. (People v. Noble (2002) 100 Cal.App.4th 184, 187-188 [121 Cal.Rptr.2d 918].) Moreover, even if the trial court errs by holding the trial after the defendant's release date with no time waiver and with no good cause, the error is not jurisdictional; thus, the defendant is not entitled to be released unless he or she objects. (People v. Williams (1999) 77 Cal.App.4th 436, 446-461 [92 Cal.Rptr.2d 1].)
In this case, defendant repeatedly waived time;[4] then she absconded, which afforded good cause to delay the trial until a reasonable time after she was reapprehended. She did not object to the timing of the trial. Accordingly, defendant's outpatient period was effectively extended.
Defendant argues that her "waiver of time to bring to trial the section 2970 petition to continue her civil commitment and outpatient treatment did not operate as a waiver of the time limit for the People to initiate a proceeding to revoke her outpatient status." (Fn. omitted.) As we hold, however, that is exactly what it didher time waiver precluded her from being released, and thus, it extended her outpatient period.[5]
We therefore conclude that the petition was not untimely.

*254 VII

DISPOSITION
The order appealed from is affirmed.
Ramirez, P. J., and Miller J., concurred.
NOTES
[1] A "Faretta motion" is a motion to allow the defendant to proceed in propria persona. (Faretta v. California (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].)
[2] In this case, Dr. Munir Sewani, acting as the designee of the director of defendant's outpatient program, opined that defendant could no longer be safely and effectively treated on an outpatient basis.
[3] Defendant seems to think that her outpatient period was statutorily limited to one year. She cites Penal Code sections 1606 and 2972.1, subdivision (a). This particular outpatient period, however, was part of her treatment as a condition of parole, pursuant to Penal Code sections 2962 and 2964. Penal Code sections 1606 and 2972.1 did not apply unless and until the court committed her for further treatment postparole, pursuant to Penal Code section 2972. (Pen. Code, §§ 2972, subd. (d), 2972.1, subd. (a).) Accordingly, her initial outpatient period could have been as long as her parole period.

Defendant also cites People v. Sheek (2004) 122 Cal.App.4th 1606 [19 Cal.Rptr.3d 737] (Fourth Dist., Div. Two), in which we stated, "The MDO Act is a civil commitment statute that provides for treatment as a condition of parole for one year...." (Id. at p. 1610, italics added.) However, this was dictum; moreover, we did not cite any statute or other authority for it.
Finally, defendant also cites People v. Lopez (2006) 137 Cal.App.4th 1099 [40 Cal.Rptr.3d 789] and People v. Garcia (2005) 127 Cal.App.4th 558 [25 Cal.Rptr.3d 660], but they do not address the issue.
[4] In one instance, as defendant notes, her attorney waived time over her objection. She does not argue, however, that a personal waiver was required. It was not. (See People v. Harrison (2005) 35 Cal.4th 208, 225 [25 Cal.Rptr.3d 224, 106 P.3d 895] [in a felony prosecution, "[i]f the defendant is represented by counsel, counsel has the authority to waive defendant's statutory right to a speedy trial, at least in the absence of evidence showing incompetence of counsel"].)
[5] In her reply brief, defendant claims that she was entitled to leave the conditional release program because her outpatient period was over, and therefore she did not "abscond." For the reasons already discussed, that was not so.