Filed 2/11/13  P. v. Christopher CA4/2
Received from the court on 12/26/13

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E053885 |
| v. | (Super.Ct.No. INC082845) |
| JEFFERSON BRUCE CHRISTOPHER, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Robert E. Law, Judge.

(Retired judge of the Mun. Ct. for the Central Orange Jud. Dist. assigned by the Chief

Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Ronald R. Boyer, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Senior Assistant Attorney General, and Alana Cohen Butler

and James D. Dutton, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Jefferson Bruce Christopher suffers from schizoaffective disorder. In 2004, after serving his time on a conviction for aggravated assault, he was committed for treatment as a mentally disordered offender (MDO). In 2011, he was recommitted for an additional one-year term; the trial court refused to place him on outpatient status.

Defendant challenges the refusal to place him on outpatient status, arguing:

1. The trial court erred by ruling that it did not have the authority to place defendant on outpatient status.

2. The trial court did not apply the correct legal standard, which required it to place defendant on outpatient status if there was reasonable cause to believe that he could be safely and effectively treated as an outpatient.

3. Because there was insufficient evidence that defendant would be dangerous even if treated as an outpatient, the trial court's refusal to place defendant on outpatient status violated due process.

We find no error. Hence, we will affirm.

I

FACTUAL BACKGROUND

A.    *The People's Evidence*.

Defendant had a history of mental illness dating back to 1976, when he was diagnosed as having schizophrenia. He had repeatedly been involuntarily detained for psychiatric evaluation under Welfare and Institutions Code section 5150.

2

In 1987, defendant was charged with attempted murder. He was found to be incompetent to stand trial and committed to Patton State Hospital (Patton). Thereafter, he was found not guilty by reason of insanity. Thus, he remained at Patton until 1992.

In 2000, the manager of a McDonald's asked defendant to leave; because defendant believed the manager was following him, he threatened to "blow [the manager's] brains out." As a result of this incident, defendant was convicted of making a criminal threat. (Pen. Code, § 422.)

In 2001, defendant accused a friend of his mother of stealing his Social Security checks; he punched her in the face six or seven times. As a result, in 2002, defendant was convicted of aggravated assault (Pen. Code, § 245, subd. (a)(1)) and sentenced to prison. In 2004, at the end of his sentence, he was found to be an MDO and committed to Patton.

Defendant's current diagnosis was schizoaffective disorder, bipolar type. His symptoms included delusional beliefs. For example, he believed that every time he got arrested, there was a hurricane on the eastern seaboard. He also believed that there were holes in the north and south poles and civilizations that lived under them, all of which was related to a secret federal government project. He claimed to have lost $300 million. Some of his delusions were persecutory or paranoid.

At the time of trial, defendant was taking two antipsychotic medications, Seroquel and Abilify. He took the medication willingly.

In the opinion of defendant's treating psychiatrist at Patton, Dr. Mubashir Farooqi, defendant's mental illness was not in remission, because he continued to have delusional beliefs. Also, his insight regarding his illness was "questionable." While he would tell Dr. Farooqi that he had a mental illness, he told other staffers that he did not.

However, also in Dr. Farooqi's opinion, defendant's mental illness was under control, meaning that his behavior had improved significantly. He followed the rules. He was not at risk of committing homicide or suicide. He had not been violent or threatened anyone with violence. He was not using drugs or alcohol. He attended Alcoholics Anonymous and Narcotics Anonymous meetings regularly. His hygiene and grooming were good. He worked at Patton as a janitor.

Finally — and again, in Dr. Farooqi's opinion — defendant still presented a substantial danger of physical harm to others. Dr. Farooqi explained that "the biggest predictor of future violence is . . . past violence." He also explained that, because defendant lacked insight regarding his mental illness, if "left to his own accord," he would not take his medication. Defendant had a history of not taking his medication, and he had committed "almost all his offenses" when he was not taking any medication. Dr. Farooqi concluded, "We just want to make sure . . . that he'll keep taking his medication and he will not resort to street drugs. If those two factors can be controlled, then I would . . . feel that he would be safe."

Dr. Farooqi testified regarding CONREP, which stands for "conditional release program." It is a "step down" program, meaning that patients are gradually granted more

4

freedom as they improve. A patient could go into CONREP only if the authorities at Patton recommended this, and then only if CONREP accepted the patient.

Previously, in 2007, defendant had been discharged into CONREP. However, when asked for a urine sample, he stated that he had smoked marijuana. As a result, his CONREP status was revoked within three hours after his discharge, which Dr. Farooqi described as "the record in our unit for now." Ultimately, defendant's drug test was actually negative. Dr. Farooqi believed that defendant "got panicky during the intake interview . . . ."

After that, defendant had "adamantly declined" CONREP, because he felt the rules were too strict. Hence, in his written report, Dr. Farooqi had recommended that defendant should not be placed on outpatient status.

By the time of trial, defendant had changed his mind and agreed to go to CONREP. Accordingly, Dr. Farooqi had changed his recommendation; he believed that defendant should be discharged to CONREP. Dr. Farooqi, however, had "heard . . . that CONREP did not accept him at this time."

B.      *Defendant's Evidence*.

Defendant testified that, in the commitment offense, the victim had stolen his Social Security check. When he asked her for his money, she spit in his face and punched him, so he punched her back. He did not feel any remorse or regret, but he would not do it again.

5

Defendant testified that there had, in fact, been a hurricane "each time they booked me on 5150s," but it was only a coincidence; he denied any causal connection.

Defendant wanted to go into CONREP. He did not feel that he had a mental illness, but he agreed that he needed medication, and he was willing to take it. In 2007, his CONREP status had been revoked because he truthfully admitted smoking marijuana at Patton in the past; he had not meant that he had smoked it recently. The CONREP authorities told him they would reevaluate him in six months, but they never did.

II

MOOTNESS

An MDO commitment lasts for one year; after that, the defendant must be either released or recommitted. (Pen. Code, §§ 2970, 2981, subd. (c).) Thus, the trial court recommitted defendant for a period ending April 21, 2012.

In a footnote, the People note that if, during the appellate process, defendant was recommitted and placed on outpatient status, this appeal would be moot. (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321.) However, they have not filed a motion to dismiss the appeal as moot. They have not shown (or even claimed) that defendant has, in fact, been placed on outpatient status. Because there is no evidence before us that the appeal is moot, we may proceed to decide it.

6

III

FAILURE TO APPLY THE CORRECT LEGAL STANDARD

Defendant contends that the trial court erred by refusing to place him on outpatient status without ever deciding whether there was reasonable cause to believe that he could be safely and effectively treated as an outpatient.

A.      *Additional Factual and Procedural Background*.

After the jury returned its verdict, there was this exchange:

"[DEFENSE COUNSEL]:  . . .  [¶]  . . .  I'm asking if the Court would order that Mr. Christopher may go into the CONREP program . . . .

"THE COURT:  I appreciate your request.  And I listened to it and I've heard it, but I don't think the Court has the authority actually to do it.

"[DEFENSE COUNSEL]:  Well, I'm informed that the Court does, but at the same time CONREP may accept or reject him.

"THE COURT:  CONREP can determine if they want to accept him.  And I'm not prepared to make such an order.  If I had the authority, I would deny it."

Accordingly, the trial court ordered defendant returned to Patton.

B.      *Analysis*.

Penal Code section 2972, subdivision (d) provides:  "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."

7

The defendant has the burden of showing that he or she is suitable for outpatient treatment. (*People v. Gregerson*, *supra*, 202 Cal.App.4th at p. 316.) "[T]o obtain outpatient treatment, the patient must raise a strong suspicion in a person of ordinary prudence that outpatient treatment would be safe and effective." (*Id*. at p. 319, fn. omitted.)

It is not entirely clear whether the applicable standard of review is substantial evidence or abuse of discretion. (See *People v. Gregerson*, *supra*, 202 Cal.App.4th at p. 319, and cases cited.) In practice, however, there is little difference between the two. (*Id*. at pp. 319-320.) "[W]e look to whether the court relied on proper factors and whether those factors are supported by the record. [Citation.]" (*People v. McDonough* (2011) 196 Cal.App.4th 1472, 1489 [denial of outpatient status to defendant found not guilty by reason of insanity].)

The People concede that under Penal Code section 2972, subdivision (d), the trial court had the authority to place defendant in CONREP, and hence, its ruling that it lacked such authority was "mistaken." They note, however, that the trial court also ruled that, even if it did have the authority to place defendant in CONREP, it would not. They argue that its refusal to place defendant in CONREP should be affirmed on this alternative ground.

Defendant responds that, because the trial court apparently was unaware of its authority under Penal Code section 2972, subdivision (d), it must also have been unaware of the fact that that subdivision required it to determine whether "there is reasonable

cause to believe that the committed person can be safely and effectively treated on an outpatient basis." He concludes that it must have used an erroneous legal standard.

Preliminarily, it appears to be undisputed that placing an MDO on outpatient status and placing an MDO in CONREP are one and the same thing; in other words, CONREP is the only outpatient program there is. (See Welf. & Inst. Code, § 4360 [statutory authorization for CONREP].) Thus, as the People concede, Penal Code section 2972, subdivision (d) did give the trial court the authority to place defendant in CONREP.

As the trial court's comments demonstrate, however, the real question, in its mind, was whether it had the authority to place defendant in CONREP *if CONREP had already rejected him*. Dr. Farooqi testified that he had recommended defendant for CONREP; however, he had "heard" that CONREP had rejected defendant. Although this was arguably hearsay, defense counsel did not object; accordingly, it was substantial evidence. (*People v. Panah* (2005) 35 Cal.4th 395, 476.)

Dr. Farooqi had also testified that a patient can be placed in CONREP only if CONREP accepts him or her. However, this was a legal conclusion. Even though defense counsel did not object, it simply was not substantial evidence. (*Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 [Fourth Dist., Div. Two].)

Penal Code section 1600 et seq. sets forth the procedures governing outpatient placement and treatment for various types of forensic committees, including persons found incompetent to stand trial (Pen. Code, § 1367 et seq.), persons found not guilty by

9

reason of insanity (Pen. Code, § 1026), mentally disordered sex offenders (Welf. & Inst. Code, former § 6300 et seq.), and sexually violent predators (Welf. & Inst. Code, § 6600 et seq.). (Pen. Code, § 1600.) Under these procedures, a person cannot be placed in CONREP unless and until CONREP accepts the person and prepares a treatment plan. (Pen. Code, § 1602, subd. (a)(2).)

However, Penal Code section 2972, subdivision (d) expressly allows a trial court to place an MDO in CONREP. Moreover, it provides, "*Except as provided in this subdivision*, the provisions of [Penal Code section 1600 et seq.] shall apply to persons placed on outpatient status pursuant to this paragraph." (Italics added.) One court has therefore concluded that "the Legislature intended separate rules to apply to outpatient treatment of civilly committed MDO's . . . ." (*People v. May* (2007) 155 Cal.App.4th 350, 362; see also *id*. at pp. 359-363.) Moreover, the *May* court indicated that MDO's are not subject to the "require[ment of] consultation with local programs and the development of a treatment plan before . . . subjects may be placed on outpatient status . . . ." (*Id*. at p. 361.) It concluded that Penal Code section 2972, subdivision (d) provided "a more streamlined process for MDO's held by a civil commitment only, as compared with other offenders." (*May*, at p. 362.)

*May*, however, was a decision of the Court of Appeal for the First District, Division Three. As far as our research has revealed, it stands alone; no other case has decided, one way or the other, whether a court can place a recommitted MDO in

10

CONREP, even if CONREP does not want to accept him or her. In theory, at least, this court could disagree with *May*.

The trial court therefore proceeded cautiously but properly. First, it assumed that it lacked the authority to place defendant in CONREP without CONREP's consent. Alternatively, however, it assumed that it *did* have the authority to place defendant in CONREP without CONREP's consent; it concluded, however, that such a placement was unwarranted.

Nothing in the record suggests that, in making the latter decision, the trial court failed to apply the correct statutory standard. "'On appeal, we presume that a judgment or order of the trial court is correct, "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" [Citation.]' [Citation.]" (*People v. Labora* (2010) 190 Cal.App.4th 907, 913-914 [Fourth Dist., Div. Two].) Moreover, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' [Citations.]" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.)

We therefore conclude that defendant cannot show that the trial court failed to apply the correct statutory standard.

IV

VIOLATION OF SUBSTANTIVE DUE PROCESS

Defendant contends that the trial court's refusal to place him on outpatient status violated due process because there was insufficient evidence that, if placed on outpatient status, he would be dangerous.

The People respond that defendant is essentially challenging the jury's finding that, by reason of his mental disorder, he represented a substantial danger of physical harm to others. Hence, we begin by determining precisely what defendant is actually arguing.

Some confusion is understandable, because dangerousness crops up again and again in a recommitment proceeding.

First, as an overarching principle of substantive due process, an involuntary civil commitment requires proof that the committee "[is] unable to control [his or her] behavior and . . . thereby pose[s] a danger to the public health and safety." (*Kansas v. Hendricks* (1997) 521 U.S. 346, 357 [117 S.Ct. 2072, 138 L.Ed.2d 501]; see generally *id.*, at pp. 357-358; see also *Foucha v. Louisiana* (1992) 504 U.S. 71, 78 [112 S.Ct. 1780, 118 L.Ed.2d 437].)

Second, as a statutory matter, in an MDO recommitment proceeding, the trier of fact must find, among other things, that "by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others . . . ." (Pen. Code,

12

§ 2972, subd. (c).) We note that, while this requirement is statutory, it is necessary in order to make the statute conform with the federal Constitution.

Third — and again as a statutory matter — the trial court must determine whether "there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis." (Pen. Code, § 2972, subd. (d).) If, so, the person must be released on outpatient status. (*Ibid.*) The question of whether the person can be treated "safely" necessarily involves a determination of dangerousness.

This third finding, however, differs from the first and second findings. The first two inquiries basically ask whether the person would be dangerous *if not recommitted and not treated.* By contrast, the third inquiry asks whether the person would be dangerous *even if recommitted and treated as an outpatient.*

Defendant, citing authorities such as *Foucha*, asserts that this requirement, too, is constitutionally mandated. However, this does not logically follow. Even though the statute refers to being "*released* on outpatient status" (Pen. Code, § 2972, subd. (d), italics added), an outpatient is, nevertheless, recommitted (see *id*., subds. (c), (d)). CONREP entails significant restrictions on a committee's freedom. As Dr. Farooqi testified, an outpatient starts out "kind of in a locked facility, but then gradually, as they improve, get more accommodated into . . . society . . . ."

Thus, defendant's position is not simply that a civil commitment requires proof that the committee is dangerous; rather, he is necessarily arguing that a *more restrictive*

13

civil commitment requires proof that the committee would be dangerous in a *less restrictive* civil commitment.

In support of this view, he cites *People v. Rasmuson* (2006) 145 Cal.App.4th 1487. *Rasmuson* stated that Welfare and Institutions Code section 6608, subdivision (a), which allows a sexually violent predator to petition for conditional release, "satisfies, in part, th[e] constitutional mandate" of *Foucha*. (*Rasmuson*, at p. 1505.) It is not at all clear that by using the words "satisfies, in part," the court meant that Welfare and Institutions Code section 6608, subdivision (a) is in itself constitutionally mandated. In any event, no such constitutional issue was presented in *Rasmuson*. Thus, this language is dictum.

In our view, dangerousness is a factor in deciding whether a person can be civilly committed *at all*. It is not necessarily a factor in deciding whether the conditions of confinement comply with due process. "[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed. [Citations.]" (*Seling v. Young* (2001) 531 U.S. 250, 265 [121 S.Ct. 727, 148 L.Ed.2d 734], and cases cited.) While dangerousness may play some part in this analysis, it is hardly the constitutional touchstone that defendant suggests.

We therefore reject defendant's constitutional challenge. We repeat, however, that as a statutory matter the trial court must determine whether the defendant can be safely treated on an outpatient basis. Moreover, as already discussed in part III, *ante*, the trial court's finding on this issue must be supported by evidence in the record. Defendant

does not argue — separate and apart from his constitutional challenge — that there was insufficient evidence that he could not be safely and effectively treated as an outpatient.[1] Nevertheless, if only out of an excess of caution, we examine this issue briefly.

Dr. Farooqi emphasized that the two biggest factors in whether defendant was dangerous were whether he was taking his medication and whether he was using street drugs. There was no evidence that CONREP would effectively ensure that defendant took his medication and stayed off street drugs. As noted in part III.B, *ante*, the burden of proof was on defendant. For this reason alone, the record supports the trial court's ruling.

Defendant points to Dr. Farooqi's recommendation, as of the time of trial, that he be placed in CONREP. One possible inference would be that CONREP could effectively control defendant's drug use and abuse. However, this was not the only possible inference. For years, defendant had resisted going into CONREP, because he felt the rules were too strict. Thus, it was inferable that he would try to get around any restrictions it imposed. Also, CONREP would allow defendant more and more freedom over time. He had a history of not taking his medication and, because he did not believe he had a mental illness, he lacked the motivation to keep taking his medication. And presumably at some point he would be able to obtain street drugs, if he so desired. Finally, even though Dr. Farooqi had recommended defendant for CONREP, CONREP

---

[1] In his reply brief, he explicitly states: "This argument was not based upon statute . . . ."

15

itself had apparently rejected him.  Thus, it was fairly inferable that defendant could not be safely and effectively treated in CONREP.

## V

## DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
                                                                          J.

We concur:


HOLLENHORST
          Acting P. J.

McKINSTER
                    J.